ALBERT L. ORDEAN and Others v. HENRY J. GRANNIS and Another.[1]

June 7, 1912.

Nos. 17,552—(120).

**Judgment by default — collateral attack — publication of summons.**
　　Where a summons is served by publication, and there is an error in the name of a defendant, though the true name and the name given be not

[1] Reported in 136 N. W. 575, 1026.

strictly idem sonans, if the names when printed look substantially alike to the eye, and it appears that neither defendant nor those who knew him .could be misled by the difference, judgment by default rendered on such service is valid as against collateral attack.

**Name of defendant — appearance in print.**

Applying this rule, it is held, where the true name of defendant was "Albert B. Geilfuss, assignee," and the name as published was "Albert Guilfuss, assignee," the difference between the names, each considered as a whole, was not such a defect as rendered the judgment void.

**Action for partition — collateral attack on judgment.**

Where a court has jurisdiction of the subject-matter and the parties, and renders a judgment which it had jurisdiction to enter if the facts pleaded and proved warranted it, such judgment, though erroneous under the pleadings and proof in the case, is not void, and cannot be attacked collaterally. This rule applied to a decree of sale in a partition action, though it may have been erroneous under G. S. 1894, § 5782, because the liens on the property exceeded in amount its value.

Action in the district court for St. Louis county by Albert L. Ordean, Margaret Sullivan, Alfred Jaques, Theodore J. Hudson, John G. Williams, Christiana Alstead, Alice E. Butchart, as administratrix and trustee under the last will of Ida Michaud, deceased, Frank Woodman, and Oliver Iron Mining Company against Henry J. Grannis and Charles K. Dickerman, to determine adverse claims to certain vacant and unoccupied real estate.

The separate answer of defendant Grannis, as a counterclaim, alleged that he had a lien upon an undivided one-fifth interest in the premises, under the sale on execution upon the Dickerman judgment against the Elder interest, as narrated in the opinion on page 122, infra; and further alleged that, independently of the title so acquired under that sale on execution, he was the owner of an undivided one-fifth interest in the land. The separate answer of defendant Dickerman likewise interposed a counterclaim, asserting that he had a similar lien upon an undivided one-fifth of the premises, as part owner of the Dickerman judgment.

The reply to each answer alleged that on May 5, 1899, in an action by George A. Elder against the Messaba Land Company, Charles E. Dickerman and others, a judgment of partition was entered decree-

ing that the land could not be partitioned, and ordering that it be sold to the highest bidder and the proceeds distributed among the defendants in the action, according to their respective rights, and appointing a referee to make a sale; that a sale was made and confirmed by order of court; that subsequently plaintiffs other than the Oliver Iron Mining Company became the owners in fee simple by mesne conveyances from the purchaser at said sale.

The plaintiffs served a supplemental complaint which alleged that the action was brought for the purpose, among others, of setting aside a certain sale of an undivided one-fifth interest in the land made on February 8, 1910, on execution upon a judgment docketed February 9, 1900, in favor of Charles E. Dickerman and against the Syndicate Investment Company and others for the sum of $23,095.-34; that plaintiffs had on February 8, 1911, deposited with the sheriff of the county the sum of $16,059, the amount necessary to redeem from said execution sale, together with a bond conditioned to pay all interest that might accrue until final redemption, and prayed for a determination of the validity of the last mentioned execution sale. The answer to the supplemental complaint alleged that plaintiffs did not then have the right to redeem the land from the execution sale last mentioned, and further alleged that on February 8, 1911, the plaintiffs were not entitled to avail themselves of the provisions of R. L. 1905, § 4315, and that the action was not brought to set aside an execution sale of land within the meaning of that section.

The case was tried before Cant, J., who made findings as stated in the opinion, and as conclusion of law found that plaintiffs other than the Oliver Iron Mining Company were the owners in fee of an undivided four-fifths of the land, subject to a mining lease executed by plaintiffs other than the Oliver Iron Mining Company in favor of that company, dated November 8, 1902, for fifty years from October 1, 1902, which covered the whole of the premises; that defendant Grannis was the owner in fee simple of an undivided one-fifth of the lands; that the judgment docketed on February 9, 1900, in favor of Charles E. Dickerman and against George A. Elder, was not a lien upon the interest of George A. Elder in the land de-

scribed; that the execution sale thereunder was invalid and void, and that plaintiffs were entitled to receive from the sheriff of St. Louis county the money and bond deposited with the sheriff under section 4315, R. L. 1905.

From that part of the judgment which adjudged plaintiffs to be the owners of an undivided four-fifths and that defendant Grannis was the owner of an undivided one-fifth of the premises described, and that the mining lease of plaintiff was not a lien upon said one-fifth, plaintiffs appealed. From that part of the judgment which adjudged plaintiffs other than the Oliver Iron Mining Company to be the owners of an undivided four-fifths of the premises, subject to the mining lease, and from that part of the judgment which adjudged that the judgment docketed on February 9, 1900, against George A. Elder was not a lien upon his interest in the land, and that the execution sale thereunder was invalid, and that plaintiffs were entitled to receive the money and bond deposited with the sheriff, defendants appealed. Reversed with directions as to plaintiffs. Affirmed as to defendants.

*Jaques & Hudson, John G. Williams,* and *William Elder,* for plaintiffs.

*Henry J. Grannis,* for defendants.

BUNN, J.

Plaintiffs brought this action to determine adverse claims to real estate in St. Louis county. The trial resulted in a judgment to the effect that plaintiffs were the owners of an undivided four-fifths interest in the land, and defendant Grannis the owner of an undivided one-fifth interest. Plaintiffs appealed from this judgment, as did also defendants Grannis and Dickerman.

There is no controversy over the facts, which are fully stated in the findings, and may be briefly stated as follows:

November 8, 1895, George A. Elder owned an undivided one-fifth interest in the land, Mesaba Land Company an undivided one-fifth, John McKinley an undivided one-fifth, and Poca Iron Company an undivided two-fifths. On or prior to this date there were docketed ten judgments against George A. Elder, and each was a lien upon his interest in the land. On or prior to November 8, 1895, there were

docketed some forty-seven judgments against John McKinley, and each was a lien upon McKinley's undivided interest in the land. Among the judgments against McKinley were two rendered in favor of Albert B. Geilfuss, assignee—one for $2,854.02, which was docketed in the judgment lien docket as in favor of Albert Geilfuss, assignee; the other for $2,125.60, which was docketed as in favor of Albert B. Geilfuss, assignee.

November 8, 1895, George A. Elder commenced a partition suit against the other owners of undivided interests in the land. In this action all of the judgment creditors of Elder and of McKinley were made defendants, except that the name Albert Geilfuss, assignee, or the name Albert B. Geilfuss, assignee, did not appear in the summons or other files in the action. The summons named Albert "Guilfuss," assignee, as a defendant.' There was no personal service of the summons upon Albert B. Geilfuss, assignee, who was the real owner of the two judgments and resided in Milwaukee, Wisconsin. The summons was duly served by publication upon the defendant designated as Albert Guilfuss, assignee, and a copy of the summons was addressed to said name at Milwaukee, Wisconsin. Neither "Geilfuss" nor "Guilfuss" appeared in the action.

The complaint in the partition action described the interests of the parties and the liens on their interests, including the numerous judgments, and asked for a partition of the lands, or, in case that could not be done, for a sale under the decree of the court. The trial resulted in a decision and judgment that the lands could not be divided, and ordering them sold by a referee to the highest bidder, the proceeds to be divided among the defendants according to their respective rights under the law. Thereafter the sale was made to August Schupp for $6,700, and duly confirmed by the court, and a deed executed and delivered to the purchaser. Plaintiff's title to the lands is derived by mesne conveyances from Schupp.

The judgment of Geilfuss, assignee, against McKinley for $2,854.-02, was in 1901 assigned to F. L. Buell. Thereafter execution was issued on this judgment and levied on McKinley's one-fifth interest in the lands, which was sold to Buell on the execution sale. Defendant Grannis succeeded by mesne conveyances to whatever title

was acquired by Buell under this execution sale, and claims title to an undivided one-fifth interest in the lands by reason thereof. This claim the trial court sustained.

In 1900 Charles E. Dickerman recovered a judgment for $23,095.-34 against George A. Elder in the district court of St. Louis county, which was docketed. Defendants Grannis and Dickerman became the owners of this judgment, and in February, 1910, the interest of Elder in the lands in controversy, if he had any interest therein, was sold on execution sale under such judgment to the defendants Grannis and Dickerman, who claim a lien upon an undivided one-fifth interest in the lands by reason of this execution sale. This claim was not sustained by the trial court.

1. Upon the appeal of plaintiffs but one question is involved. The trial court held that no jurisdiction was acquired in the partition suit over the judgment lien of Albert B. Geilfuss, assignee. If this is correct, it is clear that the lien of his judgment on the McKinley interest was not affected by the decree in the action, and that the subsequent sale of that interest under execution on the judgment gave a good title thereto to the purchaser. If, on the other hand, the court acquired such jurisdiction, the McKinley interest in the lands passed to the purchaser at the partition sale, and is owned by plaintiffs. This, of course, is on the assumption that the court had jurisdiction to decree a sale in the partition action, a question which will be determined in the decision on defendant's appeal.

The precise question is whether a service by publication on "Albert Guilfuss, assignee," gives the court jurisdiction to render a default judgment binding upon "Albert B. Geilfuss, assignee." The differences in the name of the defendant served, and the name of the owner of the judgment liens sought to be affected by the action, are the differences between "Guil" and "Geil," and the omission of the middle initial.

The learned trial court, in an exhaustive and able memorandum, reached the conclusion that the names were not idem sonans and that the difference was fatal. The question is by no means free from doubt. The trial court's conclusion is largely based upon the pronunciation of "ei" as it appears in German names, and the pronun-

ciation of "ui" as it appears in English words and proper names. It is evident that Geilfuss is a German name, and quite clear that it is pronounced with the long sound of "i." Indeed, an examination of the Century Cyclopedia of Names fails to disclose a single proper name beginning with "Gei" that is not pronounced with the long sound of "i." Examples are Geibel, Geierstein, Geiger, Geiler, Geissler, Geisenheim. The name "Geilfuss" is apparently made up of the two German words "geil" and "fuss." On the other hand, "Guilfuss" is not a compound of two German words, and has no meaning. "Guil" is not German. It is met with frequently in French, Spanish, and Italian names, and is in these languages pronounced "ē" or "wē." In English words, where the syllable ends in a consonant, it is uniformly pronounced "i" as in "guild," "guilt," "guinea." In English proper names it is given the same sound. Examples are "Guilford," "Guilford Courthouse," the London "Guildhall," "Guildenstern," "Guinevere," "Guiteau." We fail to find a single English proper name where "Gui" is pronounced like "guy." It may be true, as counsel for plaintiff says, that the name of Hon. Curtis Guild is pronounced with the sound of long "i," and that an Illinois family of the same name pronounce it in the same way. It is also true that people who have no acquaintance with foreign names pronounce them in many different ways. But, on the whole, we are inclined to agree with the conclusion of the trial court that "Geilfuss" and "Guilfuss" are not idem sonans.

This conclusion does not, however, necessarily result in a concurrence in the decision of the trial court that the difference in the names constituted a fatal defect.

Where the summons is served by publication, the true test should not be whether the names are strictly idem sonans—sound the same to the ear when pronounced—but whether they look substantially the same in print. This is the effect of Lane v. Innes, 43 Minn. 137, 143, 45 N. W. 4, and in D'Autremont v. Anderson Iron Co. 104 Minn. 165, 116 N. W. 357, 17 L.R.A.(N.S.) 236, 124 Am. St. 615, 15 An. Cas. 114, the principle is recognized. It is not easy to see why the similarity in the sound of the names should be the controlling factor when the names are not sounded, but read. In many cases

of common names that are strictly idem sonans, it could not be well said that the difference in the appearance to the eye in the published summons would be immaterial. If John Olson was sued as John Olsen, James Reid as James Reade, George Taylor as George Tailer, the names would be strictly idem sonans, and yet it should not be held that the defendant or his acquaintances could not mistake as to who was intended. So if the names are not strictly idem sonans, but look so much alike in print that it can be said that defendant or his acquaintances who saw the published notice could not mistake the person intended, the variation ought not to be held fatal. While the great majority of the cases proceed on the rule of idem sonans, we are unable to see on principle why this doctrine is applicable at all when the question arises on the difference in spelling of the true name of defendant and the name as given in the published summons. If the variation is such that the eye does not recognize the names as the same, it is fatal; but if to the eye the name, taken as a whole, looks not materially different from the true name, so that the defendant and his acquaintances would unhesitatingly say that defendant was the person named in the printed summons, then it seems unreasonable to say that the mistake in spelling is fatal.

While substituted service by publication is purely statutory and in derogation of the common law, while strict compliance with the statutory provisions is necessary to constitute due process of law, this does not mean that errors in the spelling of proper names are always fatal defects. The inquiry should always be: Was it possible that because of the error defendant failed to receive a notice that would otherwise have reached him? It is true that service by publication is not a certain method of giving defendant notice, even where his name is accurately given. But does the error in the name make it less certain? That must depend on the particular facts in each case. It is not of much assistance to compare the almost numberless authorities. See note to Thornily v. Prentice [121 Iowa, 89] 100 Am. St. 322, with alphabetical lists of names held to be idem sonans and held to be not idem sonans. When decisions are so numerous, and so variant, it serves to confuse, rather than help. But we find the

essence of the rule we have attempted to formulate in many of the cases. On principle and under Lane v. Innes, supra, it can hardly be doubted that it is the true rule.

In deciding whether the difference between the names in this case was such as might be misleading to persons reading the printed summons, we will assume that the name of the judgment creditor of John McKinley was Albert B. Geilfuss, assignee, as it appeared in the judgment book and judgment roll. The question then is, placing the names "Albert Guilfuss, assignee," and "Albert B. Geilfuss, assignee," in juxtaposition, was there so material a change as to be misleading? Could defendant, or any one knowing him, on reading the published summons, mistake the person intended? Lane v. Innes, supra. We must compare the names as a whole, including the given name, both syllables of the surname, and the designation attached. The given name is the same, the last syllable of the surname is the same, the designation or description, "assignee," is the same. The name as a whole is decidedly unusual. Indeed, it would be a remarkable coincidence if there were two persons in the world, one known as "Albert B. Geilfuss, assignee," the other as "Albert Guilfuss, assignee." The only differences are the absence of the middle initial "B.," and the use of the vowels "ui" in place of "ei." We have reached the conclusion, considering each name as a whole, that the differences between them are trivial, and not such as could possibly cause defendant, or any one knowing him, to doubt that he was the person intended to be named.

This leads to the conclusion that the judgment lien of Albert B. Geilfuss, assignee, on the McKinley interest, was cut out by the sale in the partition suit, and that defendant Grannis is not the owner of that interest, unless we can sustain the point that the court was without jurisdiction to decree a sale in that suit. This contention of defendant will be considered on appeal of defendants Grannis and Dickerman.

2. The appeal of defendants Grannis and Dickerman involves their right to a lien on the Elder interest in the lands, by virtue of the sale of that interest on execution under a judgment against Elder entered after the partition sale. If the court in the partition action

had jurisdiction to decree a sale, admittedly Elder's interest was cut off by that sale, and defendants have no lien. They contend, however, that the court in the partition suit was wholly without jurisdiction to decree a sale of the lands or to confirm such sale, and that its judgment in that respect is void and can be attacked collaterally.

This contention is founded upon the statutes of this state in force at the time of the partition action. G. S. 1894, § 5781, provides: "If it is alleged in the complaint and established by evidence, that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court, except as provided in the next section, may order a sale thereof," etc. The next section provides that when there are liens on the property amounting to more than the value thereof as stated in the complaint, or when it appears probable that the property will not sell for a sum equal to the amount of the liens, *"no sale shall be made."* Section 5787 provides for proof of the amount of any liens on the property of which partition is sought, and that, if said liens do not amount to the value of the premises as admitted or proved, a sale may be ordered. Payment of the liens is to be made out of the proceeds of the sale before division of the residue among the owners of the property.

The Elder interest in the property was subject to judgment liens in excess of $50,000, the McKinley interest to judgment liens in excess of $350,000, and the interest of the Mesaba Land Company was subject to a mortgage for over $11,000. In the partition suit it was alleged in the complaint and adjudged that the lands involved were of the value of $1,200. They were sold at the partition sale for $6,700. It appears, therefore, that there were liens on three of the five undivided interests far in excess of the value of the entire property as alleged• in the complaint. The claim is that, by reason of the existence of these liens and the provisions of section 5782 that "no sale shall be made" when the liens amount to more than the value of the property, the court had no jurisdiction to order a sale, and that its judgment was absolutely void and subject to attack collaterally.

We are clear that this claim cannot be sustained. It may have been error to decree a sale under the facts alleged and proved; but

the court had jurisdiction of the subject-matter and of the parties, and the error in ordering a sale was at the most an error that might have been taken advantage of on appeal. The court had jurisdiction to order a sale in a proper case. If the pleadings or proof showed that it was improper to do so, it was error; but the order was not in excess of the court's jurisdiction, and not void. There is no doubt that, though a court have jurisdiction of the subject-matter and the parties, if it exceeds its jurisdiction, makes a judgment or order which in no case it had jurisdiction to make, such judgment or order is void. But where the judgment attacked is one which the court could rightfully enter, if the pleadings and proof warranted it, it cannot be said to be an excess of jurisdiction if it be shown that under the pleadings or proof the judgment ought not to have been rendered. There is nothing in Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 Am. St. 612, 11 An. Cas. 348, that is in the least inconsistent with this statement. The law is so well settled that we consider further discussion or the citation of authorities unnecessary. Whether the statute applies to a case like this, where the undivided interest in the land of one of the owners thereof is free from all liens, we do not decide; but, even assuming that it does, we hold that the court in the partition action did not exceed its jurisdiction in adjudging a sale of the property or in confirming that sale. It follows that Elder's undivided interest passed by the partition sale, and that he owned no interest at the time the judgment owned by defendants was rendered. They therefore acquired no lien by the attempted levy and sale of that interest on execution.

The judgment is reversed on plaintiffs' appeal, with directions to the trial court to amend its conclusions of law and grant judgment for plaintiffs in accordance with this opinion.

Affirmed on appeal of defendants Grannis and Dickerman.

On July 5, 1912, the following opinion was filed:

PER CURIAM.

In a petition for reargument filed by defendant Grannis, it is

suggested that the necessary effect of the decision of this court is to deprive him of his property without due process of law, contrary to the provisions of article 14 of the amendments to the Constitution of the United States, though the question was not specifically decided. We necessarily hold against this contention of defendant, and so interpret the decision.

The petition for reargument is denied.