OSBORN C. NOBLES, SR. v. STEPHEN F. NOBLES ET ALS.

(Filed 28 March, 1919.)

1. **Actions—Suits—Cloud on Title—Statutes—Estates—Remainders.**

   One claiming the fee-simple absolute title to lands under a devise may maintain his action, under the provisions of our statute, to remove, as a cloud upon his title, the claims of others that the devise was only of a life estate with remainder over to themselves.

2. **Wills—Devise—Estates—Remainders—Heirs—"Legal Representatives"— Rule in Shelley's Case.**

   A devise of testator's lands to his son, and then to his "legal representatives," conveys the estate in remainder to the heirs of the first taker as a class "to take in succession from generation to generation," to the same extent and in the same quantity as they would take under our canons of descent; and the words "legal representatives" being synonymous with the word "heirs," the devise comes within the meaning of the word "heirs" used in the Rule in Shelley's case, the remaindermen not taking as by purchase, and the fee-simple absolute title vests in the first taker.

3. **Judgments—Estoppel—Tenants in Common—Severance of Possession— Title.**

   As a general rule, a judgment does not work an estoppel of record as between the parties supposed to represent the same interest unless their rights and interests have been made the subject of inquiry and decision, nor in any event does an adversary judgment constitute an estoppel as to matters beyond the scope of the issues as presented and embraced by the pleadings; and where proceedings in partition of lands contemplates only a severance of possession between tenants in common, and not the question of title, a judgment therein does not estop one of them from maintaining an action to remove, as a cloud upon his fee-simple absolute title, which he claims by devise, the claims of others that the devise was only of a life estate with remainder over to themselves.

ACTION tried before *Allen, J.,* at January Term, 1919, of PITT.

The action was to remove a cloud on the title of plaintiff, claiming to own the land in fee simple under a devise in his mother's will, as follows: "Item 1. I give and devise to my son, Osborne C. Nobles, the home in which I now live, together with all the buildings and one-half of the tract of land on which they are situated, during his lifetime, then to his legal representatives," the other half of the land having been devised, one-fourth each to Stephen F. and John C. Nobles. That in 1910, Stephen F. and John C. Nobles and plaintiff, Osborne C. Nobles, made an attempt to divide same and executed deeds to each other in pursuance of their agreement and on the theory that Osborne C. had a fee-simple interest in the portion of land divided to him.

Question having been raised as to the fee-simple title of O. C. Nobles, with a view of perfecting the division and mutually assuring the title, a proceeding was instituted and partition was made by commissioners

NOBLES *v.* NOBLES.

duly appointed by the court, and in which the share of O. C. Nobles was allotted to "him and his legal representatives."

It was contended and claimed by defendants, children of O. C. Nobles, that their father, under the devise, only had a life estate in the property, and that said defendants owned the remainder in fee.

There was judgment for plaintiff, and defendant excepted and appealed.

*F. C. Harding for plaintiff.*
*No counsel for defendant.*

HOKE, J. In *Satterwhite v. Gallagher*, 173 N. C., 528, speaking to the proper interpretation and effect of our statutes now controlling in actions of this character, to remove a cloud from the title, the Court said: "Having reference to the broad and inclusive language of the statute, the mischief complained of and the purpose sought to be accomplished, we are of opinion that the law, as its terms clearly import, was designed and intended to afford a remedy wherever one owns or has an estate or interest in real property, whether he is in or out of possession, and another wrongfully sets up a claim to an estate or interest therein which purports to affect adversely the estate or interest of the true owner, or which is reasonably calculated to burden and embarrass such owner in the full and proper enjoyment of his proprietary rights, including the right to dispose of the same at its fair market value. And it should and does extend to such adverse and wrongful claims, whether in writing or parol, whenever a claim by parol, if established, could create an interest or estate in the property, as in case of a parol trust or a lease not required to be in writing. And it should be allowed, too, when existent records or written instruments reasonably present such a claim, the statute preventing all hardship in such cases by its provision that if the holder does not insist on the same in his answer or does not answer at all the plaintiff shall pay the costs." And in same volume, *Smith v. Smith,* p. 124, the principles so stated were applied to a case like the present, where the father, claiming to own the land in fee, was allowed to maintain a suit against the children, who asserted that he only had a life estate in the property, with the remainder to his said children.

Coming, then, to the principal question, we concur in his Honor's view that the devise in his mother's will, "to my son, Osborne C. Nobles, the home and buildings and one-half the land, for his lifetime, and then to his legal representatives," confers upon the devisee a fee-simple estate in the property under the rule in Shelley's case. The principles of this notable case have been discussed and applied in several of our later

decisions, and the rule appearing given in Coke's Reports and Preston on Estates is given, respectively, as follows: "That when an ancestor, by any gift of conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the word heirs is a word of limitation of the estate, and not a word of purchase." 1 Coke, 104. And in Preston on Estates: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate of an interest of the same legal or equitable quality to his heirs or the heirs of his body as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

So stated, the rule in question has always been recognized with us, and a perusal of these and other like cases will disclose that when the terms of the instrument by correct interpretation convey the estate in remainder to the heirs of the first taker as a class, "to take in succession from generation to generation" to the same persons as those who would take as inheritors under our canons of descent and in the same quantity, the principle prevails as a rule of property both in deeds and wills and regardless of any particular intent to the contrary otherwise appearing in the instrument. *Crisp v. Biggs,* 176 N. C., 1; *Cohoon v. Upton,* 174 N. C., 88; *Ford v. McBrayer,* 171 N. C., 421; *Robeson v. Moore,* 168 N. C., 389; *Jones v. Wichard,* 163 N. C., 241; *Price v. Griffin,* 150 N. C., 523; *May v. Lewis,* 132 N. C., 115; *Nichols v. Gladden,* 117 N. C., 497.

It will be noted that in both Coke and Preston, *supra,* the words "heirs or heirs of the body" are used in defining the estate in remainder; but in the case of wills and in courts and instruments which permit and recognize other words as their equivalent and as descriptive of all those who will take in succession by reason of their hereditable blood, such words are not essential, and the rule is effective where the equivalent of heirs or heirs of the body are used in defining the estate in remainder.

In the very full discussion of the subject by *My Lord Macnachten* appearing in *Gruten v. Foxwell,* Appeal Cases, L. R., 1897, p. 658, case of a will, after stating the rule as given in Coke's Rep., on pp. 667-669, he proceeds as follows: "Every part of that statement is, I think, deserving of attention from the opening words, which declare the rule to be 'a rule of law,' to the last clause which says 'the heirs can never take by purchase in a case where the rule applies.' It is hardly necessary to observe that any expression which imports the whole succession of hereditable blood has the same effect in bringing the rule into operation as to the word heirs, though perhaps it was not always so."

And again at p. 676: "The authority of *Jesson v. Wright* was restored and its supremacy finally established in *Roddy v. Fitzgerald,* and the question now in every case must be whether the expression requiring exposition, be it 'heirs' or 'heirs of the body,' or any other expression having like meaning, is used as the designation of a particular individual or a particular class of objects, or whether, on the other hand, it includes the whole line of successors capable of inheriting."

And in the same case *My Lord Davy* expresses himself as follows: "In my opinion, the rule in Shelley's case (3) is a rule of law, and not a mere rule of construction—*i. e.,* one laid down for the purpose of giving effect to the testator's expressed or presumed intention. The rule is this: that wherever an estate for life is given to the ancestor or propositus, and a subsequent gift is made to take effect after his death in such terms as to embrace, according to the ordinary principles of construction, the whole series of his heirs, or heirs of his body, or heirs male of his body, or whole inheritable issue taking in a course of succession, the law requires that the heirs, or heirs male of the body, or issue, shall take by descent, and will not permit them to take by purchase, notwithstanding any expression of intention to the contrary."

. In *Yarnell's appeal,* 70 Pa. St., 335, interpreting a will, it was held, among other things: "If the testator intends his estate to go to the whole line of descent, lineal and collateral, he means heirs. . . . .

"The rule in Shelley's case is not a real exception to the rule that the intention of the testator must guide in interpreting a will; it sacrifices a particular to a general interest. . . .

"Heirs or 'heirs of the body' or issue, children, sons, and similar expressions, are words of limitation or purchase, according to the intent of the testator in each particular will."

In the extended and valuable note on several decisions discussing the rule in Shelley's case, among others, *Price v. Griffin,* 150 N. C., 523, which appears in 29 L. R. A. (N. S.), at p. 1014, the author says: "In the statement of the rule in the argument in Shelley's case the words of limitation used are 'heirs and heirs of the body.' To bring the rule into operation, however, it is not necessary always to use such words; equivalent expressions will do when the statement is made that the word heirs must be used. What is meant is that the word heirs or equivalent words are necessary."

In the case of wills the same position is approved by the standard text-books on the subject, uniformly, so far as examined. 3 Jarmon on Wills, p. 116; 2 Underhill on the Law of Wills, p. 890; Powell on Devises, 22 L. Litt., Vol. 2, part 2, p. 435; Tiedeman on Real Property, sec. 434; Burdick on Real Property, pp. 370, 371.

In the citation to Jarmon the author says: "In respect to the limita-

tion to heirs, we have before suggested that it is immaterial whether they are described under that or any other denomination, since it is clear that in any case in which the word issue or son has been construed as a word of limitation and follows a devise to the parent for life, or for any other state of freehold, he becomes tenant in tail by the operation of the rule in Shelley's case. The words in question are used as synonymous with heirs of the body, and consequently the effect is the same as if those words had been actually used, and upon the same principle in the converse case where the words 'heirs of the body' are explained to mean some other class of persons the rule does not apply."

In *Handy v. McKim,* 64 Md., 561, the Court was construing a deed, and the application of the rule was denied on the ground that in that jurisdiction and as to a common-law deed only the word heirs or heirs of the body would suffice to describe all of those who could take by inheritance. And in *Jane v. Wenze,* 65 N. J. Eq., 210, in a bill for specific performance, relief was denied on the ground chiefly that the construction of the particular instrument was attended with so much doubt that defendant would not be compelled to accept the title, but both in this case and the one preceding it seems to have been conceded that at common law and unaffected by statute controlling the question, in case of a will, the word heirs or heirs of the body were not necessarily required for the operation of the rule in Shelley's case, but that equivalent words would suffice. This being the established position, it is very generally held here and elsewhere that in construing a will which makes disposition of real estate to one and his legal representatives, with nothing in the instrument to qualify or restrict their import, the words legal representatives should be considered as the equivalent of heirs, and the quality and quantity of the estate determined in reference to that interpretation. *Little v. Brown,* 126 N. C., 752; *Moore v. Quince,* 109 N. C., 85-90; *Ewing v. Jones,* 130 Md., 247; *Olney v. Lovering,* 167 Mass., 446; 2 Underhill on Wills, p. 852, sec. 638. And a correct deduction from these principles is in full support of his Honor's ruling that, under the will of his mother and by operation of the rule in Shelley's case, the plaintiff becomes the owner of the land in fee simple.

The objection that the plaintiff is estopped from asserting such ownership by reason of the proceedings for partition is without merit. The record of that proceedings is not sent up, but it is very apparent that the partition in question only contemplated a severance of the possession between the tenants and in affirmance of the division that the owners had already made by their deeds. As a general rule, a judgment does not work an estoppel of record as between parties supposed to represent the same interest unless their rights and interests have been made the subject of inquiry and decision, nor in any event does an adversary

judgment constitute an estoppel as to matters beyond the scope of the issues as presented and embraced in the pleadings. *Weston v. Roper Lumber Co.,* 162 N. C., 165; *Holloway v. Durham,* 176 N. C., 551; *Hobgood v. Hobgood,* 169 N. C., 485.

We find no error in the record, and the judgment for plaintiff must be
Affirmed.