## NICHOLS v. NICHOLS et al.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1927.

No. 7573.

1. **Adoption** ⬅1—Where state law requires judicial proceedings, legal adoption cannot be otherwise shown (Rev. St. Kan. 1923, 38—105 to 38—107).

Allegations in a petition that plaintiff was adopted by a husband and wife named and is their only heir at law are merely of legal conclusions and insufficient to state a cause of action founded on plaintiff's heirship, where by the law of the state of residence (Rev. St. Kan. 1923, 38—105 to 38—107) legal adoption must be by decree of court in a proceeding brought for the purpose.

2. **Pleading** ⬅8(1)—Reply, merely stating conclusions of law, held not to put in issue fact allegations of answer.

Where the answer, in a suit to recover land, set up a judgment of a state court quieting title to the land in the person from whom defendants derived title as against plaintiff and other defendants therein, finding that due and legal service was made on plaintiff by publication, a reply denying that service in the suit was made on him "as required by law," and alleging that the affidavit for service by publication was void and insufficient merely stated conclusions of law, and did not raise an issue of fact.

3. **Names** ⬅6—Service by publication on a defendant whose middle name was given in full held good against a person of the same name except using a middle initial.

A decree quieting title against a defendant served by publication, whose middle name was given as "Kirtley," *held* valid and binding as against the complainant in a subsequent suit to recover the land, whose name was the same except that a middle initial "K." was used, in the absence of any denial in his pleadings that he was the same person or that his middle name was Kirtley.

4. **Quieting title** ⬅21—Statute authorizing suit against any person claiming an "interest" adverse to plaintiff held to apply to one claiming to be entitled by contract to all property left by plaintiff at death (Rev. St. Kan. 1923, 60—1801).

In Rev. St. Kan. 1923, 60—1801, authorizing a suit to quiet title to land by one in possession against any person who claims an estate or interest therein adverse to him. The word "interest" signifies broadly any lien, right, title, or estate through which a defendant can be said to be interested in the property, and the suit may be maintained against one who claims that by contract he is entitled to all property plaintiff may leave at death, which

claim, if established, would deprive plaintiff of the right to dispose of the land by will.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (in Suit or Action).]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In Equity. Suit by Walter K. Nichols against C. G. Nichols and others. Decree for defendants, and complainant appeals. Affirmed.

William E. Kemp, of Kansas City, Mo. (A. L. Cooper and E. A. Neel, both of Kansas City, Mo., and Samuel Griffin and W. E. York, both of Medicine Lodge, Kan., on the brief), for appellant.

Joseph G. Carey, of Wichita, Kan. (R. R. Vermilion, Earle W. Evans and W. F. Lilleston, all of Wichita, Kan., and O. W. Watkins, of St. Joseph, Mo., on the brief), for appellees.

Before STONE and KENYON, Circuit Judges.

KENYON, Circuit Judge. This case, brought by appellant in the state court of Kansas, was transferred to the federal court.

The first cause of action stated in the petition is that plaintiff at about the age of 4 years became an inmate of the Gillis Orphans' Home in Kansas City, Mo., having been left there by his stepfather; that shortly thereafter he was adopted by W. K. Nichols and Mattie B. Nichols, his wife; that W. K. Nichols died intestate on the 1st day of January, 1914, and his wife, Mattie B. Nichols, died intestate on the 5th day of January, 1917, and at the time of their death they were possessed of a large amount of real estate; that plaintiff as the adopted son and only heir at law was entitled to said real estate.

The second clause of action in the complaint sets forth: That at the time of said adoption said W. K. Nichols and Mattie B. Nichols orally agreed with said Gillis Orphans' Home that they would adopt said Walter K. Nichols, provide for, rear, and educate him as their own child, and that at their death he should receive all of their property and estate; that the said Walter K. Nichols treated the said W. K. Nichols and Mattie B. Nichols as his father and mother, and they treated him as a son. Appellant claims that he has performed all the obligations, duties, and conditions of the agreement, and is entitled to a specific performance of the contract, and asks judgment that he be decreed to be the owner in fee simple and entitled to the immediate possession of all the real estate which remained at the time of the death of Mattie B. Nichols.

To this petition appellees (who claim to be the sole heirs of W. K. Nichols and Mattie B. Nichols, two of them being sisters and one a brother of Mattie B. Nichols) filed in the District Court of the United States their answer, denying the adoption of appellant by W. K. Nichols and Mattie B. Nichols; alleging there never was any statutory or other proceeding in connection with the alleged adoption; denying any agreement with the Gillis institution that W. K. Nichols and Mattie B. Nichols would adopt the said appellant, and that he should have at their death all of their property and estate. They admit that said Walter K. Nichols did live at the home of W. K. Nichols and Mattie B. Nichols until he became of age. Also, in the nature of a cross-petition, appellees plead that the probate court of Barber county, Kan., having full jurisdiction of the estate of W. K. Nichols, administered upon and closed the same; that the order of final settlement, made on May 20, 1914, recited "that said Mattie B. Nichols is the widow and the sole and only heir at law of the deceased, and as such is entitled to all of the personal property of the deceased on distribution herein, and that as such sole and only heir at law the said Mattie B. Nichols is the absolute owner in fee simple of all of the real estate of the said deceased, said deceased having died intestate leaving no other heirs than the said Mattie B. Nichols"; that this order was not appealed from, and is conclusive and res adjudicata as to who were the heirs of W. K. Nichols; that following the death of Mattie B. Nichols administration of her estate was had in the probate court of Barber county, Kan., and an order of final settlement was made on November 10, 1917, pursuant to legal notice, and conformable to law, finding that appellees were the sole heirs; that said order was a final adjudication as to who were the heirs of Mattie B. Nichols.

Appellees in their answer further set forth that during the lifetime of Mattie B. Nichols she instituted in the district court of Barber county, Kan., a proceeding to quiet title against certain parties, including Walter Kirtley Nichols, appellant here; that in that action the court found that due and legal service of summons had been made upon said Walter Kirtley Nichols, and that plaintiff in that suit, Mattie B. Nichols, was the owner in fee simple and in possession of the real estate

described in the petition, and that the court further found that Walter Kirtley Nichols had no right, title, interest in, or claim upon the real estate involved in that suit (which is the same real estate involved in this suit). The answer further alleges that this judgment of the district court of Barber county, Kan., was never appealed from; that plaintiff's claim is without foundation and legal right, and casts a cloud upon the title of appellees' real estate. The said answer prays "that plaintiff take nothing by this action and that plaintiff's petition herein be dismissed, and that on their counterclaim these defendants be decreed to be the absolute owners of the real estate described in plaintiff's petition, and that the plaintiff herein be decreed to have no valid right, title, or interest in and to the same, and that these defendants have such other and further relief as they may be entitled to in equity, and for the costs of this suit."

Appellant filed a reply, after an order pro confesso duly entered had been set aside by the court, admitting the probate proceedings in Barber county, Kan., relative to the estate of W. K. Nichols and Mattie B. Nichols, but claiming that the probate court had no jurisdiction over the estate of Mattie B. Nichols to determine questions of title to property so as to conclude heirs or persons claiming an interest in the estate, or to decide who were the heirs at law of said Mattie B. Nichols. Appellant also in said reply admitted that during the lifetime of Mattie B. Nichols she instituted a proceeding to quiet title against certain parties, including Walter Kirtley Nichols, to the land described in appellant's petition, but denies that the suit was duly and regularly brought, and that appellant was duly and regularly served by publication, or that said cause came on regularly for hearing on the 1st day of January, 1915, or that due and legal service or summons was had upon this appellant, but admits the proceedings had were substantially as set out in appellees' answer.

Appellees moved for judgment on the pleadings. The court sustained this motion, and on March 18, 1926, a decree was entered in the United States District Court at Wichita, Kan., by which the title of appellees against appellant was established and all persons claiming by, through, or under appellant were barred, estopped, and foreclosed from asserting or claiming any right, title, interest, estate, claim, lien, or incumbrance in or upon said real estate or any part thereof. The decree contains this: "And

the court finds that, in view of the pleadings and the admitted facts and all of the circumstances of the case, the plaintiff is not entitled to recover from the defendants, or any of them, on any issue presented by the pleadings."

The case is rather a unique and strange one. Plaintiff arrived at age in 1913 and went out in the world for himself. W. K. Nichols died in 1914, and his estate was closed in May, 1914, by proper order. Mattie B. Nichols died in 1917, and her estate was likewise closed in 1917. This suit was not commenced until 8½ years after her death. The case was determined by the trial court on the pleadings, and, according to the language of the decree, some "admitted facts." Not all of the various court proceedings are in the record presented to us. The proceedings to quiet title which are alleged to be a part of the answer are not here, and the record is incomplete and unsatisfactory in this respect. Counsel for appellees state in their brief: "However, during the argument in the court below, duly certified and admittedly correct copies of all proceedings referred to were produced and under controlling authorities the quiet title proceedings were found to be sufficient." The reply brief takes no issue with this statement.

Appellees' motion for judgment on the pleadings admitted the truth of all well-pleaded facts in the petition and the reply. 21 R. C. L. p. 594.

[1] The first cause of action in the petition was based on an alleged adoption of appellant. It is not set forth how the alleged adoption was brought about. There is no pretense of statutory adoption. It was admitted before this court in oral argument that there was no statutory adoption. However, appellant claims in its reply brief that the allegations "that plaintiff was adopted," and that plaintiff is "the only heir at law" of said W. K. Nichols and Mattie B. Nichols is sufficient to state a cause of action.

The adoption of children is regulated by statute in Kansas. Rev. Stat. Kan. 1923, 38 —105 to 38—107 (which are substantially the same as those in effect at the time of the alleged adoption). These statutes provide court proceedings. The adoption of children in a particular state must comply with, and be carried out in pursuance of, the statute of the state. The rule is stated in 1 Corpus Juris, p. 1373, as follows: "Since adoption is unknown to the common law, it follows that a legal adoption can be effected in no other way than that provided by the statute au-

thorizing it, and all the courts are agreed that there must be at least a substantial compliance with all the essential requirements of the statute. A parol adoption is not sufficient, nor is an adoption effected by a mere surrender of the custody of the child, nor by merely recognzing and referring to a child as an adopted child."

In Malaney v. Cameron, 98 Kan. 620, 159 P. 19, it is held that, inasmuch as the statutory proceeding for adopting a child includes the consent of the probate judge, no legal adoption can result from the mere contract and conduct of the parties, although under certain circumstances property rights growing out of promises made in that connection may be enforced. See, also, Sarah A. Renz v. Virginia Drury et al., 57 Kan. 84, 45 P. 71; Shearer et al. v. Weaver et al., 56 Iowa, 578, 9 N. W. 907; Walter H. Ross v. Joseph M. Ross, 129 Mass. 243, 37 Am. Rep. 321; In re Session's Estate, 70 Mich. 297, 38 N. W. 249, 14 Am. St. Rep. 500. The statement in the petition that plaintiff was adopted is the statement of a mere conclusion of law. Long v. Dufur et al., 58 Or. 162, 113 P. 59.

In view of the entire record and the admissions in the argument before us, we are satisfied that no proceedings of adoption, as provided by the statutes of Kansas, were ever carried out as to appellant, and we do not understand that appellant so claims. We think, therefore, the first cause of action is eliminated from this case.

The second cause of action is based on an alleged oral contract which plaintiff claims to have performed, a part of which is as follows: "That at ,the said time of adoption from the said Gillis Orphans' Home, as aforesaid, the said W. K. Nichols and Mattie B. Nichols, his wife, orally agreed with said institution that they would adopt the said Walter K. Nichols, plaintiff herein, provide for, rear, and educate him as their own child, and at their death said plaintiff should receive all of their property and estate."

We do not think it necessary to discuss the numerous defenses pleaded, such as the lack of right in the Orphans' Home to make the contract, the statute of limitations, the applicability of the statute of frauds, the effect of the probate proceedings, or the doctrine of laches. Some of these at least raise questions of grave doubt.

[2] The determination of one question is decisive of the case, and that is the effect of the suit to quiet title, brought by Mattie B. Nichols in the district court of Barber county, Kan., in which she obtained a decree against appellant, quieting title in her to the lands in question here, and holding that appellant had no right, title, or interest therein.

Subdivision 16 of appellees' answer is as follows:

"Further answering, and by way of further defense, these defendants say that during the lifetime of Mattie B. Nichols, she, as plaintiff, instituted in the district court of Barber county, Kan., a quiet title proceeding in which W. J. Neal, James F. Feltner, Walter Kirtley Nichols, et al., were defendants, in which proceeding said plaintiff sought to quiet the title in her to the land described in the plaintiff's petition herein; that in said quiet title suit the plaintiff herein was duly and regularly served by publication, and in due course said suit went on to judgment, and on January 1, 1915, at an adjourned day of the regular October, 1914, term of the said court, the above-entitled action came on regularly for hearing. The court found that due and legal service of summons had been made upon each and every one of the defendants, including Walter Kirtley Nichols, plaintiff herein, and that the plaintiff was the absolute owner in fee simple, and was in the quiet, peaceable, open, notorious, undisputed, exclusive, and adverse possession of all of the real estate described in said journal entry of judgment, being the same real estate described in the petition herein. And the court found that plaintiff herein claimed some interest in said land, and that said claim tended to cloud the title of the therein plaintiff, Mattie B. Nichols, and by the judgment of the court the service on the defendant Walter Kirtley Nichols, defendant in the quiet title proceedings and plaintiff in this proceeding, was approved, and the title of the plaintiff, Mattie B. Nichols, in said real estate, and each and every part thereof, was established and forever quieted as against the said Walter Kirtley Nichols, and the other defendants, and said Mattie B. Nichols, plaintiff, was adjudged to be the absolute owner in fee simple of all of the real estate; and that the said Walter Kirtley Nichols and every person claiming under, through, or by him was forever barred, estopped, and foreclosed from ever asserting, or claiming any right, title, estate, interest, claim, lien, or incumbrance in and to or upon the said real estate, or any part of it. The said journal entry of judgment was signed by Hon. P..B. Gillett, judge of the Twenty-Fourth judicial district, and was duly entered in said proceeding on January 1, 1915, was never appealed from, and has since this date been in full force and effect. A reference is made to

said quiet title proceedings, and the same are made a part of this answer, and particularly the said journal entry of judgment, as fully as though said proceedings were incorporated and set out in detail in this answer."

If these matters had in a trial of the case been established by the evidence, it would have ended the case.

Appellant in his reply admitted the institution of the proceedings to quiet title during the lifetime of Mattie B. Nichols, and admitted they were substantially as set out in appellees' answer. We quote therefrom:

"Plaintiff, further replying to the defendants' answer and more particularly to paragraph 16 of said answer, admits that during the lifetime of the said Mattie B. Nichols, deceased, she instituted in the district court of Barber county, Kan., a quiet title proceeding in which W. J. Neal, James F. Feltner, and Walter Kirtley Nichols, et al., were defendants, in which said plaintiff, Mattie B. Nichols, sought to quiet the title in her to the land described in plaintiff's petition.

"Plaintiff, further replying to said paragraph 16 of said defendants' answer, admits that the proceedings had in the said action of Mattie B. Nichols against W. J. Neal et al., were substantially had as set out on page 6 of the defendants' answer."

Appellant in his reply denies that in the action to quiet title legal service was had upon Walter K. Nichols *as required by law,* and alleges that the *affidavit for service by publication was void* and not made as required by law, and was insufficient upon which to base the publication notice, and that the judgment was null and void. There is no denial of the allegation in subdivision 16 of the answer heretofore set out that the court found *that appellant "had been duly and regularly served by publication;" "that due and legal service of the summons had been made upon Walter Kirtley Nichols, plaintiff in the present suit."*

Do these denials raise questions of fact?

The mere allegation that legal service as required by law was not made or that the affidavit for service was void and insufficient, is not adequate to raise an issue as to the validity of the judgment in the light of subdivision 16 of the answer. These are mere statements of legal conclusions. Naddo v. Bardon et al. (C. C.) 47 F. 782; Ollis et al. v. Orr et al., 6 Idaho, 474, 56 P. 162; State v. County Court, 54 Or. 255, 101 P. 907, 103 P. 446; Splonskofsky et al. v. Minto, 62 Or. 560, 126 P. 15; Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Silberschein v. United States (D. C.) 285 F. 397; Angel v. Byars, 153 Ky. 208, 154 S. W. 1109; Lutien et al. v. City of Kewaunee, 143 Wis. 242, 126 N. W. 662, 127 N. W. 942.

Appellant's brief apparently admits the regularity of the proceedings to quiet title. We refer to the language on page 10 thereof:

"In appellees' answer they set up the order made in the final settlement of the estate of W. K. Nichols, in which Mattie B. Nichols was adjudged to be the sole heir, and also the order made in the final settlement in the administration of the estate of Mattie B. Nichols, in which these appellees were named as her sole heirs, and also a decree in a suit to quiet title, prosecuted by Mattie B. Nichols after the death of the said W. K. Nichols, in which title was quieted in her against certain defendants, including one Walter Kirtley Nichols, which appellees allege is the same person as the appellant here. The making and entry of these orders and decrees stand admitted by the appellant."

Again on page 33:

"Of course this claim as an heir of W. K. Nichols and a right to share with Mattie B. Nichols in his estate might properly have been presented in said quiet title proceedings, and, if the claim were not complied with, a collateral agreement to leave the property to him upon their death, the decree, if valid, might operate to cut off this claim. But his failure to set up rights which he may, at the time, have had in the estate of W. K. Nichols, cannot affect a similar right which he, under his first cause of action, is asserting as an heir of Mattie B. Nichols. His right as an heir of Mattie B. Nichols, deceased, was not affected by the decree quieting title in her. But, regardless of the construction placed upon the first cause of action in appellant's petition and the effect of the orders of the probate court and the decree quieting title with respect thereto, it is unquestionably clear that appellant's rights under his second cause of action are not affected by said default decree quieting title in said Mattie B. Nichols, or by the said orders of the probate court."

One of appellant's stated contentions in his brief on this appeal is as follows:

"The order and decree made and entered in the suit to quiet title, instituted by Mattie B. Nichols against Walter Kirtley Nichols and others, in which the title to the land described in the petition herein was quieted in the said Mattie B. Nichols, constitutes no defense to, nor is it conclusive and res adjudicata of, appellant's rights set out in either

the first cause of action or the second cause of action in plaintiff's petition herein."

Again on page 32 of the brief it is said:

"It is clear, therefore, that the default judgment obtained by Mattie B. Nichols, quieting title in her, is no bar to appellant's rights in this case, under his second cause of action, inasmuch as his rights under the contract therein alleged did not accrue until the death of Mattie B. Nichols."

All through the original brief of appellant it is recognized that a decree quieting title in Mattie B. Nichols had been entered in a proper proceeding, the legality of which was not seriously questioned until the reply brief. These proceedings in the action to quiet title were before the trial court and are not before us. That court evidently found the proceedings regular and sufficient.

[3] In his reply brief, appellant contends that there is an issue of fact raised by the pleadings as to whether Walter Kirtley Nichols, defendant in the suit to quiet title, is the same person as Walter K. Nichols, plaintiff in this suit, and that the denial of Walter K. Nichols that he was ever served by publication in this quiet title suit puts the question in issue of whether Walter Kirtley Nichols is in fact Walter K. Nichols. This is the first time this question seems to have been raised. Apparently it went without question in the argument of appellant and in the argument of appellees that Walter K. Nichols, appellant, was one of the parties against whom the action to quiet title was brought. This action to quiet title in Barber county seems to be concededly to be one where notice could be given by publication under the laws of Kansas.

Is a fact question raised under these pleadings as to whether or not Walter K. Nichols was the same person as Walter Kirtley Nichols?

Appellant's reply brief seems to concede that this is the only disputed fact question in the record as to the quiet title proceedings. Subdivision 16 of the answer, it is to be remembered, states that the court found due and legal service of summons had been made upon appellant, Walter Kirtley Nichols, and also states that Walter Kirtley Nichols is the same party as plaintiff here. The suggestion of the reply that Walter Kirtley Nichols may be another person than plaintiff seems to be an afterthought.

The answer alleges that Walter Kirtley Nichols is the same person as plaintiff in this case. The reply does not in terms deny it. The reply brief does not deny it, but enters into the realm of supposition as to whether he is or is not.

Interchangeability of names and errors in initials have been provocative of much litigation. The rule of the application of the doctrine of similar names to constructive service is stated in 19 R. C. L. p. 1335, as follows:

"Since the method of obtaining jurisdiction over one's person or property in an action commenced by substituted or constructive service of process is exceptional, and in derogation of any common-law method of procedure, some courts take the position that no presumptions, in order to make good the service should be indulged that are not strictly and clearly warranted by the law sanctioning such practice, and that, if the service of such process is made under the wrong name, the service will not be validated by a resort to the doctrine of idem sonans. Other courts take a more liberal view and apply the general doctrine of idem sonans to service by publication. Still other courts take the position that, where the summons is served by publication, the true test should not be whether the names are strictly idem sonans—sound the same to the ear when pronounced—but whether they look substantially the same in print. If the variation is not such as to mislead the defendant or his friends or acquaintances, it should not be held fatal."

See, also, 20 R. C. L., page 700.

In Puckett v. Hetzer, 82 Kan. 726, 109 P. 285, 136 Am. St. Rep. 127, it was held that a default judgment quieting title, based upon service made by publishing a notice which stated the defendant's name as Joseph Remer, is valid against Joseph Renner.

In Jane Rowe v. Wilson Palmer, 29 Kan. 337, it was held that a judgment against Joseph Shaffer, quieting title to a piece of land, rendered upon default and upon service by publication only, was valid as against the owner of the land, whose name was Joseph Shafer.

In D'Autremont et al. v. Anderson Iron Co. et al., 104 Minn. 165, 116 N. W. 357, 359, 17 L. R. A. (N. S.) 236, 124 Am. St. Rep. 615, 15 Ann. Cas. 1114, the court draws a distinction between the rule that a wrong initial will not affect the jurisdiction of the court where the right party is actually served with process and brought into court, and the situation where service is by publication against a nonresident of the state, and holds that a service by publication, where there is a substantial error in the name of the defendant, confers no jurisdiction on the court, and that, where there is an attempt

to give the full name of the defendant and a wrong initial is used, "it must, in view of the very common practice of identifying particular individuals by adding their middle name, be held that the error is misleading, and likely to result in prejudice to those who may perchance notice the same as published in the newspaper. It would be straining the rule requiring a strict observance of the statute permitting service of process in this manner to hold an error so likely to mislead and prejudice an irregularity only." And the court held that publication of a summons to "George H. Leslie" confers no jurisdiction over "George W. Leslie."

In another Minnesota case (Ordean et al. v. Grannis et al., 118 Minn. 117, 136 N. W. 575, 1026, L. R. A. 1915B, 1149), it was held that, where the true name of the defendant was Albert B. Gielfuss, assignee, and the name as published was Albert Guilfuss, assignee, the difference was not such a defect as to render the judgment void. This case reached the Supreme Court of the United States (234 U. S. 385, 395, 34 S. Ct. 779, 783 [58 L. Ed. 1363]), and that court, in discussing the power of a state through its courts to proceed to judgment respecting the ownership of lands within its limits upon constructive notice to parties residing beyond the reach of process, and its effect upon the due process clause of the Fourteenth Amendment says: "Of course, in a published notice or summons, intended to reach absent or nonresident defendants, where the name is a principal means of identifying the person concerned, somewhat different considerations obtain. The general rule, in cases of constructive service of process by publication tends to strictness." Of course, service by publication, a strictly statutory matter, being in derogation of common law, it is necessary that the requirements of the statutes be strictly complied with or the judgment will be void, but, as said by the Supreme Court in Grannis v. Ordean, supra, "even in names, 'due process of law' does not require ideal accuracy." On the general subject, see Ohlmann v. Clarkson Sawmill Co., 222 Mo. 62, 120 S. W. 1155, 28 L. R. A. (N. S.) 432, 133 Am. St. Rep. 506; Fincher v. Hanegan, 59 Ark. 151, 26 S. W. 821, 24 L. R. A. 543; Schoenfeld v. Bourne, 159 Mich. 139, 123 N. W. 537, 30 L. R. A. (N. S.) 122 (where there are extended notes on the subject); Riley v. Litchfield, 168 Iowa, 187, 150 N. W. 81, Ann. Cas. 1917B, 172; Allison v. Thomas, 72 Cal. 562, 14 P. 309, 1 Am. St. Rep. 89.

In the case we are considering there was no error in the middle initial, so the effect of such error is not before us. There was the use of the name "Kirtley" in place of the mere initial "K." Unquestionably this could not be such error as to permit defendant to say that it invalidated the judgment. It could not have misled appellant had he seen the notice. There is no claim that "Kirtley" was not his middle name. If it was, the notice was more specific than it need have been. Appellant in his reply brief suggests that it might not be his name, but does not say it was not, and there is no pleading under oath that it was not his name. All the pleadings are on the theory that plaintiff in this action was one of the defendants in the action to quiet title, and no contrary suggestion is made until the reply brief.

It is to be noted also that under the statutes of Kansas (Rev. Stat. 1923, 60—2530), where judgment is rendered on service by publication, a party may at any time within three years after the date of the judgment have the same opened and be permitted to defend the case. No such action was taken by this appellant. The entire theory of appellant seemed to be, at least up to the time of filing the reply, that appellant had no interest in the property at the time the action was brought by Mattie B. Nichols to quiet title; that the right asserted by him did not accrue under the terms of the alleged agreement until the death of Mattie B. Nichols, and that at the time of her death he would for the first time have the right to assert his claim to her property, and that whatever interest he had in the property accrued after the default judgment quieting title was rendered, and therefore was not affected thereby. The position of appellant under its second cause of action is that the alleged foster parents, having made this contract with him, could go ahead and dispose of their property, and he had no right to complain, but that, if they kept it until the time of their death instead of selling it, he should have it all. If this position be correct, W. K. Nichols and Mattie B. Nichols were deprived of the right to will their property, which is a substantial right. Under this alleged agreement W. K. Nichols and Mattie B. Nichols could not enter into any other agreements with any of their children to leave them any of the property owned by them at the time of their death, although they could during their lifetime have sold the property and given them the money free from any claim of appellant. Certainly there can be no doubt that when appellant arrived at the age of 21 he could have trans-

ferred his right in the alleged contract, and he could have renounced any claim in the property.

[4] The statutes of Kansas (section 60—1801, Statutes of 1923, originally enacted in 1909) provide as follows: "An action may be brought by any person in possession by himself or tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse estate or interest." It is unquestioned that appellees were in possession of the real estate claimed by appellant at the time this action was commenced, so the provision of the statute as to possession was met.

Was appellant a person claiming an "interest" in the real estate of W. K. and Mattie B. Nichols at the time of the commencement of this action, as that term is used in this statute?

This court, in Ormsby v. Ottman et al., 85 F. 492, 497, said: "The word 'interest' is the broadest term applicable to claims in or upon real estate. In its ordinary signification among men of all classes it is broad enough to include any right, title, or estate in, or lien upon, real estate. * * * The word 'interest' seems to have been used by the Legislature in this ordinary and broad signification not only in the section of the statute under consideration, but in other enactments. * * * The word 'interest' undoubtedly signifies any lien, right, title, or estate through which the defendant could be said to be interested in the property."

Under a California statute almost identical with the Kansas statute, the Supreme Court of that state in Castro v. Barry, 79 Cal. 443, 446, 21 P. 946, 947, said: "The proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property. * * * It is not aimed at a particular piece of evidence, but at the pretensions of an individual. * * * Nor is it necessary that the adverse claim should be of any particular character. As said by Baldwin, J., delivering the opinion in Head v. Fordyce, 17 Cal. 151, the statute 'does not confine the remedy to the case of an adverse claimant setting up a legal title or even an equitable one; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension.' See also Horn v. Jones, 28 Cal. 204; Joyce v.

20 F.(2d)—31

McAvoy, 31 Cal. 287, 288, 89 Am. Dec. 172. And the rule may be even more broadly stated, viz. that the action may be maintained by the owner of property to determine any adverse claim whatever."

A case cited by appellant in its brief on another point urged is strong authority against appellant on this question of interest in the property, viz. Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421, where the court said: "But if the contract with the Utheims expressly provided, not only that plaintiff should be adopted by them but also that she should receive their property, or a child's share thereof, at their death, a different question is presented. Under such a contract, the rights of plaintiff would not depend upon the will, nor upon the laws of descent, but would be fixed and determined by the contract. Such rights attach to the property of the decedent by virtue of the express contract made by him in his lifetime; and create, or at least may create, a claim of title to the property adverse to the title thereto given by will or by the laws of descent. The determination and enforcement of such rights is ordinarily beyond the jurisdiction of the probate court; and they are unaffected by a decree of the probate court determining the devolution of the property of the decedent, at least unless they have been submitted to that court for determination." See, also, Satterwhite et al. v. Gallagher, 173 N. C. 525, 92 S. E. 369; Nobles v. Nobles et al., 177 N. C. 243, 98 S. E. 715.

Appellant was claiming an interest in the lands of W. K. and Mattie B. Nichols at the time the action to quiet title was commenced, which, if established, would prevent them disposing of the same.

The purpose of the acts in practically all of the states providing for an action to quiet title is to reach any claim of interest in the property adverse to the interest of the real owners. A claimed interest that prevents the owner of property disposing of the same by will is just as much the claim of an adverse interest as one that prevents his disposing of it by sale. In view of the presumptions in favor of the judgment of the trial court, it is doubtful if under the condition of this record, important matters being apparently omitted therefrom, we would be justified in reversing its judgment. Johnson et al. v. City of Spokane, 29 Wash. 730, 70 P. 122. We are satisfied, however, that the claimed interest of appellant in these lands was cut off and barred by the decree of the district court of Barber county, Kan., in the action

to quiet title. It is unnecessary therefore to determine the other questions involved.

The decree of the trial court is affirmed.