## STELLA REID v. INDEPENDENT UNION OF ALL WORKERS AND OTHERS.
## JOSEPH V. VOORHEES, RELATOR.[1]

September 24, 1937.

No. 31,192.

*Josiah A. Baker* and *Gilbert E. Carlson,* for relator.
*Sasse, French & Dunnette,* for respondent.

STONE, JUSTICE.

*Certiorari* to review relator's conviction for contempt.

September 29, 1936, upon notice and after hearing, the Honorable Norman E. Peterson, judge of the tenth judicial district, issued a temporary injunction restraining defendants from certain picketing activities aimed at a "beauty shop" maintained by plaintiff in the city of Austin. Defendant Voorhees, the present relator, chose

[1]Reported in 275 N. W. 300.

to ignore the injunction, violated it, and thereafter at a hearing before the Honorable A. B. Gislason, one of the judges of the ninth judicial district, was adjudged guilty of contempt and sentenced to four months' imprisonment in the county jail.

The answer had not been served and was not before Judge Peterson when he ordered the temporary injunction. But the issues arising from complaint and answer were before the court on the hearing. They were two in number: (1) Whether the controversy involved a labor dispute within the definition of L. 1933, c. 416, §§ 12(a) and 12(c), 3 Mason Minn. St. 1936 Supp. § 4260-12(a)(c), entitled "An act relating to labor disputes and to define and limit the jurisdiction of the courts to issue any restraining order or temporary or permanent injunction in such cases." (2) Whether defendants by their picketing and other activities were attempting to compel plaintiff to join them in a conspiracy in unlawful restraint of trade. The second issue was ignored by Judge Peterson in granting the temporary injunction, which was based exclusively on his conclusion that no labor dispute within the meaning of the act was involved.

■ While this writ is a direct attack on the judgment of conviction, it cannot succeed unless the temporary injunction, issued without findings of fact, was a nullity. That is because this proceeding is a collateral and not a direct attack upon that injunction, under the rule of such cases as State ex rel. Tuthill v. Giddings, 98 Minn. 102, 107 N. W. 1048. There the relator had violated the affirmative form of injunction which we call the writ of *mandamus*. It was held that it could not be collaterally impeached or avoided in a proceeding, such as the instant one, to punish the relator for his disobedience of the writ.

■ In other words, in order to succeed here relator must show that the action of Judge Peterson was a nullity. L. 1933, c. 416, does attempt without equivocation to curtail, to the extent indicated, the "jurisdiction" of the district court to issue injunctions. Whether the jurisdiction of the district court, which was created and defined by the constitution rather than the legislature, can be so limited by the legislature, is not before us. No question has

been raised as to the constitutionality of the act. Jurisdiction aside, our constitution provides that the legislature may regulate the practice and proceedings of the courts. Const. art. 6, § 14. Doubtless, therefore, and strictly speaking, without impinging upon the jurisdiction of the court, the legislature by the 1933 law may, we assume, be deemed to have properly imposed a duty upon it. See the distinction between judicial jurisdiction or power on the one hand and mere duty on the other, made in Fauntleroy v. Lum, 210 U. S. 230, 28 S. Ct. 641, 52 L. ed. 1039, and repeated in Marin v. Augedahl, 247 U. S. 142, 38 S. Ct. 452, 62 L. ed. 1038. Also, any study of the statute, on constitutional grounds, would be futile in proportion as it ignored the obvious truth that "the constitutional problems raised by our state statute are entirely different from those raised" by any federal statute. McClintock, *The Minnesota Labor Disputes Injunction Act*, 21 Minn. L. Rev. 619, 626.

With the foregoing by way of mere caution, we treat the matter as one of jurisdiction, and on the postulate that whether Judge Peterson had power, except after "findings of fact," (L. 1933, c. 416, § 7) to issue the temporary injunction depended upon whether the action involved a labor dispute. Certainly, with nothing before him he could not determine that question on the mere asseveration of one or the other of the litigants or their respective counsel. The question was one of mixed law and fact requiring first ascertainment of the facts from the showing in respect thereto. If the facts showed no "labor dispute," as Judge Peterson decided, the statute did not apply. It is that negative decision of an issue of intermingled law and fact that is now under collateral attack. And no case has been cited wherein, in a labor case (or in any other for that matter), such a decision has been nullified by a collateral, as distinguished from a direct, attack.

In any such case, the first thing for a district judge to determine, and he cannot avoid its decision if the question is presented, is whether the statute applies. Of the general subject-matter of injunctions, he has unquestioned jurisdiction. As long as nothing more infallible than human beings can be found wherewith to implement our courts, such jurisdiction implies, as matter of regret-

table but inescapable necessity, that jurisdiction to decide is the power to decide erroneously as well as correctly. As it was put in Foltz v. St. Louis & S. F. Ry. Co. (C. C. A.) 60 F. 316, 318:

"Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud."

The jurisdiction of our federal courts is limited and its boundaries diligently observed. Occasionally, however, federal judges have made the mistake of deciding cases of which later it was discovered they should not have taken jurisdiction. Notwithstanding, it has been held that the resulting judgments were not open to collateral attack. An illustrative case is Des Moines Nav. & R. Co. v. Iowa Homestead Co. 123 U. S. 552, 559, 8 S. Ct. 217, 220, 31 L. ed. 202, wherein it was said:

"Whether in such a case the suit could be removed was a question for the circuit court to decide when it was called on to take jurisdiction. If it kept the case when it ought to have been remanded, or if it proceeded to adjudicate upon matters in dispute between two citizens of Iowa, when it ought to have confined itself to those between citizens of Iowa and the citizens of New York, its final decree in the suit could have been reversed, on appeal, as erroneous, but the decree would not have been a nullity. To determine whether the suit was removable in whole or in part, or not, was certainly within the power of the circuit court. The decision of that question was the exercise and the rightful exercise of jurisdiction, no matter whether in favor of or against taking the cause."

In an early case, Colton v. Beardsley, 38 Barb. 29, 30, the whole proposition was concisely put thus:

"When the jurisdiction of an inferior tribunal depends upon a fact which such tribunal is required to ascertain and determine by its decision, such decision is final until reversed in a direct proceed-

ing for that purpose. The test of jurisdiction, in such cases, is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong."

Without attempting a digest of the cases on the subject, our study of them suggests certain cautions to be observed in their approach. First, a court of general jurisdiction may, in a particular matter, be proceeding "under special statutory authority." The distinction on the question of jurisdiction between such a proceeding and an ordinary action within the general jurisdiction of the court is stressed in Galpin v. Page, 18 Wall. 350, 370, 21 L. ed. 959. There a collateral attack upon the judgment under a special statute was successful because the record showed absence of jurisdiction of an essential party. A familiar illustration of such a special statutory proceeding is found in those for the enforcement of delinquent real estate taxes where any substantial failure to comply with statutory prerequisites to jurisdiction is held fatal. If it appears on the face of the record, it insures success for a collateral attack. That rule had typical application in Senichka v. Lowe, 74 Ill. 274.

To such a lack of jurisdiction to do anything or to proceed at all is the statement applicable that it is [74 Ill. 276] "absurd to say" that a finding in favor of jurisdiction is conclusive "when the very record would show that this finding was void for want of jurisdiction to find anything whatever in the case." Such dicta never apply where, upon opposing pleadings and conflicting evidence, the court must proceed to decide an issue thereby presented. Error in such a decision does not vitiate the jurisdiction to make it.

Second, it is highly important to examine, and with care, both the factual and the legal targets of such statements as this: "Erroneous decision as to its own jurisdiction of the subject of an action rendered by a court without jurisdiction is, as we have said, entirely void and has no conclusive effect upon the parties to the action, though the court might have jurisdiction of their persons." Matter of Baltimore Mail S. S. Co. v. Fawcett, 269 N. Y. 379, 390, 199 N. E. 628, 633, 104 A. L. R. 1068. That language was used by the court of appeals of New York in granting a writ of prohibition

against the supreme court, preventing its proceeding further with the case in question. In other words, it was a direct attack, as a petition for a writ of prohibition always is, upon the jurisdiction of the inferior tribunal to proceed at all or in a given manner. There is nothing collateral about it. It is wholly immaterial that the lower court has already determined that it may proceed. The factors of decision being those of direct as distinguished from collateral attack, the language above quoted was entirely accurate.

In Illinois the practice has developed of using *mandamus,* where prohibition has been tardy, to compel vacation of an order or judgment void for want of jurisdiction. Such a case was People ex rel. Carlstrom v. Shurtleff, 355 Ill. 210, 189 N. E. 291, 296. The reasoning of the majority opinion indicates that the proceeding was considered a direct attack upon the order in question, one releasing a prisoner on writ of *habeas corpus,* which was nullified by the *mandamus* compelling its vacation. Concurring in the result, Mr. Chief Justice Orr objected to such use of the writ of *mandamus* and, quoting from People ex rel. Barrett v. Shurtleff, 353 Ill. 248, 264, 187 N. E. 271, 277, he stated what we consider a correct generalization:

"The jurisdiction does not depend upon the sufficiency of the bill. If the court has jurisdiction of the subject matter—that is, the power to render a decree in the class of cases to which the particular case in question belongs—and of the parties, nothing further is required. The cause of action may be defectively stated in the bill, but that will not destroy jurisdiction. Jurisdiction of the subject matter does not mean, simply, jurisdiction of the particular case before the court, but jurisdiction of the class of cases to which the particular case belongs. Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be."

In this connection this thought intrudes. In injunction cases, where the first question is whether there is involved a labor dispute, can the party with the affirmative come here and successfully apply for a writ of prohibition to prevent a district judge from entering

upon any consideration at all? Could we bar him from looking far enough into the pleadings and taking enough evidence to get his own answer, as the trial court, to the question whether he is confronted with a "labor dispute." No formula, either of logic or sense, has suggested itself to justify such a revolutionary procedure. Yet, if in this collateral attack on the injunction, relator may of right prevail, he should have come here in the first instance with a petition for a writ of prohibition upon the ground, let us say, that, while he was sure that a labor dispute was presented, the district judge might decide erroneously to the contrary. (Such a writ would have prevented inquiry below into the issue of jurisdiction, or any other.) Consideration of such a petition would require us, not as an appellate, but as a trial, court, to *try* the very first issue presented, which might be one of law or fact or both. That, of course, would be beyond our function as an appellate court. Such a decision is for the trial courts. Like any other, when merged in a judgment, as it has been here, it is subject to the long-standing and elementary rule distinguishing between direct and collateral attack. We have no power to create exceptions to that rule. To do so would be rank judicial usurpation and a granting of unlawful favor rather than the rendition of lawful judgment.

To show the plain error of the attempt made to apply here the dictum of Matter of Baltimore Mail S. S. Co. v. Fawcett, 269 N. Y. 379, 199 N. E. 628, 104 A. L. R. 1068, we take the very facts of that case. One Madsen had been injured while working as a seaman on a steamship of the relator, which he had sued for the resulting damage. Because of the facts stated in the opinion, the court of appeals held that to allow Madsen's case to proceed in the courts of New York would be an unconstitutional burden upon interstate commerce under the rule of Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996. Therefore they held that the New York courts were without jurisdiction and granted prohibition. Now, suppose that Madsen had prosecuted his case to final, and for him, successful judgment in the New York courts. Could the defendant therein, the steamship company, then have maintained successfully a collateral attack upon the judgment for

lack of jurisdiction, assuming that it had appeared on the record from the first, the defendant objecting all along, as it did in vain until its resort to prohibition? No case can be cited, no *rule* can be formulated to sustain the conclusion that, the courts of New York having jurisdiction generally of transitory actions and *in personam* of the necessary parties, their judgment in the case supposed would not have been immune to collateral attack. See again Foltz v. St. Louis & S. F. Ry. Co. (C. C. A.) 60 F. 316, and Des Moines Nav. & R. Co. v. Iowa Homestead Co. 123 U. S. 552, 8 S. Ct. 217, 31 L. ed. 202.

Senn v. Tile Layers Protective Union, Local No. 5, 222 Wis. 383, 268 N. W. 270, 274, 872, affirmed 301 U. S. 468, 57 S. Ct. 857, 81 L. ed. 829, has much of present interest but nothing of relevancy. The case went up on appeal. Neither in the decision of the state nor in that of the supreme court is there anything touching upon the differing criteria of decision in collateral and direct attack. Mr. Justice Fowler of the supreme court of Wisconsin dissented upon the ground that [222 Wis. 391] "the case is not within the labor code." In American Furniture Co. v. I. B. of T. C. and H. of A. 222 Wis. 338, 341, 268 N. W. 250, 106 A. L. R. 335, a principal issue, and the first considered by the supreme court, was whether there was a "labor dispute as defined by the statute." It was decided in the affirmative.

Our own case of Ordean v. Grannis, 118 Minn. 117, 118, 136 N. W. 575, 1026, is typical. There, in another action, the district court had entered a judgment which it was distinctly its duty not to enter under a controlling statute. But the rule was applied that where a court has jurisdiction generally of the subject matter and the parties and renders a judgment which it had jurisdiction to render if the facts pleaded and proved warranted it, such judgment, "though erroneous under the pleadings and proof in the case, is not void, and cannot be attacked collaterally."

That is precisely this case if, as basis for consideration, we assume for the facts *all* that relator claims for them. On that hypothesis, the decision resulting in the temporary injunction was erroneous but not void. That is, if relator is right on the merits,

the decision would have been reversed long before this if he had chosen the speedy method of direct attack (hereinafter mentioned) on the temporary injunction, afforded by the statute and which Judge Peterson offered to facilitate. But the present attack is collateral rather than direct, and must fail for that reason if for no other.

The argument for relator consists in sum of mere assertion that the district court was without jurisdiction to decide that the case presented no labor dispute. If so, if there was no capacity to decide one way, gone also is the power to determine the opposite. Yet courts must and do have the power to decide any issue either way as the law and evidence determine. And under the labor injunction acts, such as ours, it is of the very essence of their purpose that the court determine, first, whether there is a labor dispute. If there is none, the statute is out of the case—otherwise it controls.

That is enough to decide the case, but we consider it our duty to make this much of addition. L. 1933, c. 416, § 9, reads thus:

"Whenever any court of the State of Minnesota shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, the court shall, upon the request of any party to the proceedings and on his filing the usual bond for costs, forthwith certify as in ordinary cases the record of the case to the Supreme Court for its review. Upon the filing of such record in the Supreme Court, the appeal shall be heard and the temporary injunctive order affirmed, modified, or set aside with the greatest possible expedition, giving the proceedings precedence over all other matters except older matters of the same character."

Without considering whether review by certification is now the exclusive method of review, it is at least the most speedy and satisfactory one. It recognizes by clear implication the impact on labor disputes of the doctrine of collateral attack by providing a new and speedy mechanism of direct attack. With such a statutory setup, there is no shadow of excuse for an injunction defendant to violate the injunction (they will take bad or no counsel who do) without any previous attempt to review it. That has special

application to this very case, for Judge Peterson, in passing affirmatively upon the application for temporary injunction, said:

"If the defendants desire, I will certify today, or as soon as the papers can be prepared, to the Supreme Court, the order which I will today sign, for review by the Supreme Court, and it can be promptly reviewed, as to whether or not the labor union is within its rights in enforcing, or attempting to enforce by picketing, the compelling of the signing by a merchant or by an operator over there of a business, of an agreement fixing prices."

We take this occasion of advising the bar and the public that, in the interest of celerity and economy of procedure, our rules are in the course of amendment so as to obviate the necessity for printing either records or briefs in a case certified to us under L. 1933, c. 416, § 9.

If under our rules there is "dilatoriness in appeals," that is, in review by certification of questions arising under L. 1933, c. 416, the cause will not be found here. Reduced almost to the point of extinction are the working weeks of the year when there is not available for the prompt consideration and decision of any issue requiring such treatment, a quorum of this court. Our capacity in that respect has been tested somewhat under the statute (1 Mason Minn. St. 1927, § 490) providing for the summary review here of questions arising under the election laws and on occasion requiring decision at the earliest possible moment. Assuming no freedom from error, we have yet to hear of any charge of dilatoriness in such matters of public interest as require expedition in adjudication.

In any event, the instant case involves no strike and hence offers no target for any criticism on the ground that the legitimate interest of strikers may be adversely affected by the orderly but speedy procedure for review specially set up for their benefit by the statute itself. The alternative is for those affected thereby to decide for themselves what laws to obey and when; what judgments to fulfill and what to violate. Such ruinous cultivation of the fields of democracy and the consequent evacuation thereof by the farm hands of orderly administration under law. without whose faithful tillage

no harvest of democracy can ripen, was of all things not contemplated by the statute.

We have considered the facts properly presented by the writ. Of them, it is enough to say that they well sustain the judgment of conviction, which is affirmed.

Affirmed.

GALLAGHER, CHIEF JUSTICE (concurring specially).

It seems to me that when either party litigant, whether it be employer or employe, invokes the benefits of the labor act, L. 1933, c. 416, he becomes bound by its conditions; in other words, those who accept its benefits must assume its burdens and in asserting their rights should follow the procedure outlined therein. As pointed out in the majority opinion, that act provides for a speedy review by appeal to this court whenever any court of the state of Minnesota shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute. The act further provides that the trial court shall, upon the request of any party to the proceedings and upon his filing the usual bond for costs, forthwith certify the case to this court for review. The record shows that Judge Peterson at the time of the issuance of the temporary injunction offered immediately to certify the case in accordance with the provisions of the labor act. The defendant did not see fit to preserve his rights by appeal in the manner provided in the act; in other words, he is now attempting to assert his rights by relying upon certain provisions of the labor act and at the same time attempting to escape his own failure to take advantage of other provisions adopted for his benefit and protection. This he cannot do.

The majority opinion is based upon the assumption that even though the trial court erroneously decided that the case did not present a labor dispute, the decision upon that issue is not now subject to a collateral attack. It seems to me that from the record presented the trial court could well have found that the case did not involve a labor dispute. In its final analysis the only issue between the plaintiff, Stella Reid, and the defendant Union and its officers pertained to the rates plaintiff must charge her customers for

services rendered. That was clearly a price-fixing requirement and illegal. At the hearing on the application for the temporary injunction and before, in her conversations with the defendant Voorhees, plaintiff offered to comply with all other demands made by the Union. This was not denied by the defendants at the trial and constituted the record when the matter was presented to the trial court. From that record the court arrived at the conclusion that the case did not involve a labor dispute.

That the defendant recognized the correctness of the court's ruling is evidenced by what followed. The application for a temporary injunction was heard on September 28, 1936. The injunction issued the following day. On October 1, 1936, the defendant Union, of which the defendant in this case was an officer, wrote a letter to the plaintiff reading as follows:

"Re—Stella Reid vs. Independent Union of All Workers, et al.:
"Dear Madam:

"The district court has made its order in the above entitled action finding that the schedule of wages and prices previously submitted to you and the negotiations following do not involve a labor dispute. The court also finds that the union cannot legally set prices charged customers in its agreements with beauty shops.

"In conformity with the terms of this order we submit herewith a schedule of wages to be paid beauty shop operators omitting prices to be charged customers by the beauty shops. You and your counsel, Mr. French, stated in court on the hearing in this matter that you have no objection to the wage schedule previously submitted. Please note that the enclosed schedule is on a piece work basis. The wages paid under it will amount to the same as under the former proposal, but without anything in it requiring you to charge customers any specified amounts. For instance the old schedule requires the shops to charge $3.00 for a permanent wave and allows the operator 40% of this charge as wages, amounting to $1.20 to be paid to the worker for giving a permanent wave. You can charge customers anything you like under this new agreement.

"What we are interested in is the wage feature and the only reason for including customer's prices in the old schedule was merely a method of determining wages. On considering the matter we see no objection to conforming to your wishes and certainly we must conform to the court's order. We submit the enclosed schedule in compliance therewith.

"We wish to thank you for the consideration given this matter and we are very glad that you will cooperate with us.

> "Very truly yours,
> "BEAUTICIANS UNIT No. 9, LOCAL..
> No. 1, INDEPENDENT UNION OF
> ALL WORKERS.
> "Sanford McCourt, Business Agent."

Attached to the letter was a new proposed agreement embodying minimum commissions to be paid employes, apparently drafted for the purpose of eliminating that part of the original proposed agreement to which the plaintiff objected. Following this and on October 6, 1936, defendants in the injunction action served upon plaintiff's counsel a notice of motion to vacate the temporary injunction and assigned as grounds therefor "that defendants have in all things complied with the terms of said temporary injunction and that the reasons for granting such injunction no longer exist and that said injunction can no longer serve a useful purpose." Attached to the notice of motion were copies of the letter and second proposed agreement hereinbefore referred to. The original notice of motion with proof of service was offered by the defendant as an exhibit in this proceeding (exhibit DD) and comes here as one of the exhibits.

The motion to vacate the temporary injunction was returnable October 15. Instead of awaiting action on the motion, the defendant in this action deliberately violated its conditions on October 7, one day after the notice of motion was served and several days before the date fixed for hearing thereon. What transpired subsequent to the issuance of the temporary injunction is not important as bearing on the issues immediately before this court; namely, as

to whether the trial court had jurisdiction and as to whether a labor dispute was involved. As stated, the evidence referred to clearly indicates to me that the defendants recognized that the case at the time of the issuance of the temporary injunction did not present such a dispute and endeavored to correct their position after its issuance so as to create one. This could not strengthen their position.

In my judgment, there was an issue before Judge Peterson at the time of the hearing on the application for a temporary injunction as to whether the case involved a labor dispute. Upon the record before him I do not see how he could decide that question other than the way he did. To sum up the matter, if a labor dispute was not involved, the action of the trial judge was correct. Even though a labor dispute was involved, the defendant failed to take advantage of the provisions of the act plainly fixing his remedy. In either event, he cannot now be heard to complain and for the reasons stated cannot prevail in this proceeding.

I concur in the result.

LORING, JUSTICE (concurring).

I am in accord with the views expressed by Mr. Justice Stone. At the same time I recognize the soundness of the special concurrence of Mr. Chief Justice Gallagher.

PETERSON, JUSTICE (dissenting).

The application for the temporary injunction was heard upon the verified complaint, affidavits, and oral testimony. All have been returned to us as part of the record in this case. At the hearing for the temporary injunction relator had not interposed an answer, did not file any affidavits, and produced no oral testimony. No facts were litigated. There were none to litigate because there was no dispute as to them. The complaint discloses upon its face that the controversy involved is a labor dispute, and the affidavits and oral testimony, while not admissible to impeach, vary, or enlarge the complaint, substantiate its allegations.

1. This case involves a labor dispute. A labor dispute is defined by statute. 3 Mason Minn. St. 1936 Supp. § 4260-12[2] (printed in full in the margin). As far as pertinent to this case, the statute defines a labor dispute to be a controversy concerning terms and conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employe. The statute provides that a case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation, whether such dispute is between one or more employers or associations of employers and one or more employes or associations of employes.

---

[2]"§4260-12: Definitions—When used in this act and for the purposes of this act—(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation; or have direct or indirect interests therein; or who are employes of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

Subsection (b) of the act provides:

"A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation."

The complaint upon its face alleges a labor dispute within the meaning of the statute. It alleges that plaintiff is an employer of beauticians; that Beauticians' Unit No. 9, Local No. 1, is composed of employed beauticians and that the individual defendants are agents and employes of the named organization; and that she refused to sign a proposed agreement to pay her employes a percentage of prices to be charged the public. The wage to be paid the beauticians is a percentage of the prices charged the public. Thus the prices charged the public fix the standard of wages. A copy of the proposed agreement is printed in the margin.[3] She proposed to sign the agreement as modified so as to charge the public a lower scale of prices. The defendants objected to this because it reduced the actual wages paid the employes. Her employes were satisfied with her scale of prices and the wages based thereon. Her contention was that there was no labor dispute because she had no dispute with her employes and because she claimed that the only dispute was as to the prices which she should charge the public. Relief is asked against defendants as persons participating in and interested in this dispute as employes, officers, and agents of defendant organizations.

---

"(d) The term 'court of the State of Minnesota' means any court of the State of Minnesota whose jurisdiction has been or may be conferred or defined or limited by Act of Legislature. (Act Apr. 22, 1933, c. 416, § 12.)"

[3]July 16, 1936.

To Whom It May Concern:

The Beauticians Unit No. 9, Local No. 1, IUAW, agrees that the following schedule of prices shall be the minimum charges on the specified

The anti-injunction act is not confined to labor disputes between employers and employes. By § 4260-12(c) it is provided that the disputants need not stand "in the proximate relation of employer and employee." It is sufficient that the controversy relate to terms and conditions of employment, involving persons who are engaged in the same industry, trade, craft, or occupation. The disputants may be an employer and an employe or an association of employes. By an employe is meant not an employe of the employer who is one

beauty work, the following opening and closing hours shall be observed, and that the following wages shall be the minimum wages paid operators:

### PRICES

| | | | |
|---|---|---|---|
| Permanent Waves | $3.00 | Hair Dyes | $2.50 |
| Permanent End Curls | 2.50 | Scalp Treatment and | |
| Permanent Indiv. Curls | .25 ea. | Shampoo | 1.00 |
| Marcels | .50 | Color Rinse | .25 |
| Resets | .35 | Eye Brow and Eye Lash Dye | .50 |
| Finger Waves (Dry) | .50 | Arch | .35 |
| Finger Waves (Wet) | .35 | Manicure | .50 |
| Shampoos | .35 | Henna Pack & Shampoo | 1.00 |
| Facials | 1.00 | Permanent & Progressive | |
| | | Tints & Shampoo | 2.00 |

### HOURS

No appointments before 8 A. M. or after 6 P. M. on Monday, Wednesday, Thursday.

No appointments before 8 A. M. or after 8 P. M. on Tuesday, Friday, and Saturday.

No operator to work more than 54 hours a week.

### WAGES

40% commission on permanent waves, 50% on all other beauty work with a minimum guarantee of $12.50 per week for all operators working in one shop less than a year, and a minimum guarantee of $14.00 per week for all operators working in one shop one year or more. For extra work, $2.00 minimum guarantee per day.

BEAUTICIANS UNIT NO. 9, LOCAL NO. 1.<br>
Signed: Byrdella Born, President<br>
Phyllis Carpenter, Sec'y-Treas.

Acknowledged before me
this 16th day of July, 1936.
I. M. Hoffman—Mower County,
Notary Public. My commission
expires Nov. 6, 1942.

of the disputants, but any employe, no matter who his employer may be. An association of employes does not mean an association of employes who are employed by an employer who is one of the disputants, but an association composed of employes no matter by whom they are employed. The act recognizes the generally known economic fact that wages and conditions of employment in an industry, trade, craft, or occupation are affected by those prevailing in every other shop and place of employment. Mr. Chief Justice Taft, in American Steel Foundries v. Tri-City Central Trade Council, 257 U. S. 184, 209, 42 S. Ct. 72, 78, 66 L. ed. 189, 27 A. L. R. 360, stated that to render this combination at all effective employes must make their combinations extend beyond one shop, and that it is helpful to have as many as may be in the same trade or in the same community united, "because in the competition between employers they are bound to be affected by the standard of wages in their trade in the neighborhood." The statute provides that a person is interested in the labor dispute if "relief is sought against him * * * and if he * * * is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, * * * or is a member, officer, or agent of any association composed in whole or in part * * * of employees engaged in such industry, trade, craft, or occupation."

Cases arising under similar acts are held to apply to employers whose employes do not belong to unions and who are entirely satisfied with their working conditions and who have no controversy with their employer. It is sufficient under the statute that the controversy be between workers and employers of others or associations of employes and such employers. Senn v. Tile Layers Protective Union, Local No. 5, 301 U. S. 468, 57 S. Ct. 857, 81 L. ed. 829, affirming 222 Wis. 383, 268 N. W. 270, 274, 872; Levering & Garrigues Co. v. Morrin (C. C. A.) 71 F. (2d) 284, *certiorari* denied, 293 U. S. 595, 55 S. Ct. 110, 79 L. ed. 688; Dehan v. Hotel & Restaurant Employees, etc. Local Union (La. App.) 159 So. 637; Cinderella Theater Co. v. Sign Writers' Local Union (D. C.) 6 F. Supp. 164; American Furniture Co. v. I. B. of T. C. and H. of A. 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; Fenske Bros. v. Upholsterers'

International Union, 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318. It is therefore clear that the decision of the court below upon the jurisdictional question as to the existence of a labor dispute was erroneous as a matter of law. Upon the basis of this error, the court invested itself with jurisdiction of the case.

2. The statutory requirements as to findings of fact as a condition to the issuance of an injunction in a labor dispute are jurisdictional. It is conceded in the majority opinion that L. 1933, c. 416, goes to the jurisdiction and not to the duty of the court. We could not hold otherwise. The act is entitled as one to limit the jurisdiction of the courts in issuing injunctions in labor disputes, and § 7, which regulates the procedure, commences: "No court of the State of Minnesota shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute," etc. The legislature, following the lead of the Congress of the United States, and the legislatures of many other states, acting upon the suggestion of Mr. Justice Holmes in Fauntleroy v. Lum, 210 U. S. 230, 28 S. Ct. 641, 52 L. ed. 1039, that a statute may be designed to limit the power—that is, the jurisdiction—of the court rather than its duty (see Lowery v. State L. Ins. Co. 153 Ind. 100, 54 N. E. 442), expressly limited the jurisdiction of the courts to issue injunctions in labor disputes except upon strict compliance with the procedural requirements of § 7. That section provides that the court shall not have jurisdiction to issue injunctions except after findings of fact required by the statute, which it is conceded the court below did not make. The Norris-LaGuardia act (29 USCA, §§ 101-115), and state anti-injunction laws modeled after it, adopted in many states, contain this provision. Our statute is such an anti-injunction law. These statutes have all been construed to limit the jurisdiction of the court to act at all and not simply as a regulation of judicial duty. Senn v. Tile Layers Protective Union, Local No. 5, and American Furniture Co. v. I. B. of T. C. & H. of A. *supra;* Geo. B. Wallace Co. v. International Assn. etc. 155 Or. 652, 63 P. (2d) 1090; Dehan v. Hotel & Restaurant Employees, etc. Local Union, *supra.* See note on American Furniture Co. v. I. B. of T. C. & H. of A. *supra,* in 85

U. of Pa. L. Rev. 224. In a case involving the Norris-LaGuardia act, United Electrical Coal Companies v. Rice (C. C. A.) 80 F. (2d) 1, 5, *certiorari* denied, 297 U. S. 714, 56 S. Ct. 590, 80 L. ed. 1000, this is made clear by the following language: "The legislation in question took from District Courts, jurisdiction of causes involving labor dispute injunction suits between citizens of different states, in certain limited instances * * *." To same effect, Levering & Garrigues Co. v. Morrin (C. C. A.) 71 F. (2d) 284.

The rule is well established in this state that a statute defining and limiting the jurisdiction of a court is to be construed as jurisdictional and as limiting the power of the court to act. Ullman v. Lion, 8 Minn. 338 (381), 83 Am. D. 783; State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845; State ex rel. Holland v. Miesen, 98 Minn. 19, 106 N. W. 1134, 108 N. W. 513; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348; State ex rel. Evans v. District Court, 118 Minn. 170, 136 N. W. 746; State ex rel. Burnquist v. District Court, 141 Minn. 1, 168 N. W. 634, 3 A. L. R. 1476; Northwestern Fuel Co. v. Live Stock State Bank, 182 Minn. 276, 234 N. W. 304.

The temporary injunction is void upon its face and may be attacked collaterally for want of jurisdiction. Disregard of statutory provisions withdrawing jurisdiction of the court to issue a temporary injunction except after having made the findings required by the statute discloses invalidity on the face of the proceedings. If it appear affirmatively on the face of the record that a judgment or order was made without jurisdiction, it is void and may be attacked collaterally. 34 C. J. p. 528, § 834; 15 R. C. L. p. 895, § 374. This rule is firmly established by this court and has been applied in cases too numerous to be cited. In In re Will of Mousseau, 30 Minn. 202, 14 N. W. 887, 888, a probate proceeding was attacked upon the ground that the court was without jurisdiction, appearing on the face of the petition, and the subsequent proceedings. The estate there involved had been once probated and because of alleged errors a second probate thereof was attempted. This court treated the question as one of law to be decided upon the

record. In speaking of the invalidity of the second probate proceeding, the following language is used [30 Minn. 204]:

"But certainly the probate court possessed no authority to set it aside, as it assumed to do, for the nonappointment of a guardian *ad litem* for an infant heir, because that fact could not under any circumstances be a legal ground for so doing. This want of authority appears upon the face of the petitions and subsequent proceedings. The petitions presented no case to the probate court—no facts tending to make a case for the exercise of any lawful jurisdiction. In other words, the petitions show upon their faces that the probate court had no jurisdiction whatever in the premises except to dismiss. The inevitable consequence is that both the judgment annulling the first probate, and the second probate, are absolutely and entirely void."

In Northwestern Fuel Co. v. Live Stock State Bank, 182 Minn. 276, 234 N. W. 304, 306, an order assessing the stockholders of defendant bank was held to be void, affirmatively disclosed by the record, because the law of Minnesota grants exclusive power to the commissioner of banks to liquidate insolvent state banks. It was held that the judgment of the district court appointing a receiver for the defendant bank and making the assessment was void because the court did not have the power to appoint the receiver and make the assessment by reason of the statute, which places such power exclusively in the hands of the commissioner of banks. At page 281 of the opinion Mr. Justice Holt said: "We think on the face of the record is disclosed want of jurisdiction in the district court to appoint a receiver to enforce plaintiff's judgment." Other cases of collateral attack on judgments are Ullman v. Lion, 8 Minn. 338 (381), 83 Am. D. 783, judgment in insolvency proceedings held invalid because of failure to give notice to creditors; State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845, on *habeas corpus,* judgment of conviction of municipal court of Minneapolis held void as being in. excess of the jurisdiction of that court; State ex rel. Holland v. Miesen, 98 Minn. 19, 106 N. W. 1134, 108 N. W. 513, on *habeas corpus,* conviction for contempt held to be invalid because of

failure to show that right or remedy of party had been defeated or prejudiced; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348, an action to determine adverse claims in which judgment beyond issues authorized by statute was ordered, held to be void as to relief authorized by the proceedings; State ex rel. Evans v. District Court, 118 Minn. 170, 136 N. W. 746, on *certiorari*, injunctional order of juvenile court of Minneapolis, forbidding marriage of girl of age of 15 years, personally before the court, held to be void for want of jurisdiction; State ex rel. Burnquist v. District Court, 141 Minn. 1, 168 N. W. 634, 3 A. L. R. 1476, prohibition issued out of this court holding proceedings in contempt for violation of temporary injunction of district court to be void upon its face because of want of jurisdiction of district court to proceed against the governor and adjutant general under the laws of the state; State ex rel. Hilton v. Village of Kinney, 146 Minn. 311, 178 N. W. 815, *quo warranto* holding that an election was valid although held in violation of temporary injunction of federal court which was void upon its face for want of jurisdiction of the court.

In 15 R. C. L. p. 854, § 328, the rule is stated:

"One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. *A failure to comply with statutory requirements regulating the exercise of the jurisdiction of a court may be sufficient to deny to a judgment validity which will protect it from collateral attack.* Thus if a statute provides that a court in actions for divorce must, after the trial thereof, file its decision and conclusions of law, and, if it determines that a divorce ought to be granted, must enter an interlocutory judgment and that one year after such interlocutory judgment is entered, the court may, on motion of either party, or upon its own motion, enter a final judgment granting the divorce, a judgment entered in the first instance granting an absolute and immediate divorce is not erroneous merely, but is beyond the jurisdiction of the court, and void. Where a court is authorized by statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the

power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire jurisdiction, and its judgment will be a nullity and subject to collateral attack."

The following cases sustain the text: Whitley v. Black, 9 N. C. 179, 11 Am. D. 753; Wall v. Wall, 123 Pa. 545, 16 A. 598, 10 A. S. R. 549; Grannis v. Superior Court, 146 Cal. 245, 79 P. 981, 106 A. S. R. 23; Risley v. Phenix Bank, 83 N. Y. 318, 38 Am. R. 421; Gray v. Clement, 296 Mo. 497, 246 S. W. 940; Chickamauga Trust Co. v. Lonas, 139 Tenn. 228, 201 S. W. 777, L. R. A. 1918D, 451; Bryner v. Fernetti, 141 Kan. 446, 41 P. (2d) 712.

Even in the case of a court having general jurisdiction of the subject matter, failure to comply with the provisions of a statute jurisdictional in its nature renders orders and judgments in violation thereof void as being without authority and in excess of the jurisdiction of the court. It may be conceded in this case that the district court has general jurisdiction of the subject of injunctions. But its power to issue injunctions in a labor dispute is limited by the provisions of § 7. The court acted without authority when it failed to observe the requirements of § 7, and this rendered the temporary injunction void. In Seamster v. Blackstock, 83 Va. 232, 234, 2 S. E. 36, 37, 5 A. S. R. 262, the court said: "And though a court may obtain jurisdiction rightfully, yet its decrees may be void, because, in the progress of the cause, it has exceeded its jurisdiction." In Anthony v. Kasey, 83 Va. 338, 340, 5 S. E. 176, 177, 5 A. S. R. 277, the court said: "Now it is essential to the validity of a judgment or decree, that the court rendering it shall have jurisdiction of both the subject matter and parties. But this is not all, for both of these essentials may exist and still the judgment or decree may be void, because the character of the judgment was not such as the court had the power to render, or because the mode of procedure employed by the court was such as it might not lawfully adopt. On this subject Mr. Justice Field has this pertinent observation: 'Though the court may possess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its modes of procedure and in the extent and character of its judg-

ments. * * * A departure from established modes of procedure will often render the judgment void.' Windsor v. McVeigh, 93 U. S. [274], 282, 283 [23 L. ed. 914]." The granting of an absolute divorce in the first instance under a statute requiring that an interlocutory decree be entered and that an absolute divorce may be granted one year thereafter is void upon its face as being issued in violation of the statute. Grannis v. Superior Court, 146 Cal. 245, 79 P. 981, 106 A. S. R. 23.

3. The decision of the court below on the question of jurisdiction is void and subject to collateral attack. In this case the want of jurisdiction appears on the face of the record. The complaint alleges a labor dispute within the meaning of the statute. That appearing, a temporary injunction could be issued only by making the necessary findings of fact in compliance with the terms of the statute. Failure of the court to comply with the statute rendered its acts without jurisdiction. They were *coram non judice*. This is well settled by the decisions of this court which have been cited *supra*. In In re Will of Mousseau, 30 Minn. 202, 204, 14 N. W. 887, 888, we said: "But, whatever may be the rank or dignity of a court, when it appears upon the face of a given proceeding that it has acted where it had no authority to act, the unauthorized action is necessarily void," and "If a court 'act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void,'" citing Elliott v. Peirsol, 1 Pet. 328, 7. L. ed. 164, and other cases.

There was no preliminary question to decide except one of law. The only question before Judge Peterson upon the hearing for the granting of the temporary injunction was whether or not the complaint disclosed a labor dispute. This raised a question of law, not one of fact. The decision was to be made upon the files and records before him and not upon oral testimony. In the Mosseau case, *supra*, it was held that this question is to be decided upon the face of the petition upon which the proceedings are based. In Behrens v. City of Minneapolis, 199 Minn. 363, 365, 271 N. W. 814, 816, we said: "The complaint, answer, and reply, as pleadings, determine whether the proceeding is one in which

an injunction should issue, * * *." In State ex rel. Kaiser v. Miller, 316 Mo. 372, 379, 289 S. W. 898, 901, it is said: "The question however, of jurisdiction of respondent as judge of said court, does not rest upon contested facts, and is one of law." To the same effect: Fair v. Kohler Die & S. Co. 228 U. S. 22, 33 S. Ct. 410, 57 L. ed. 716; Geneva Furniture Mfg. Co. v. S. Karpen & Bros. 238 U. S. 254, 35 S. Ct. 788, 59 L. ed. 1295; Turner v. Cotton, 123 Ark. 40, 184 S. W. 415; Lake Shore & M. S. Ry. Co. v. Clough, 182 Ind. 178, 104 N. E. 975, 105 N. E. 905; Boone v. Poindexter, 12 Smedes & M. (Miss.) 640; Jersey City v. Gardner, 33 N. J. Eq. 622; Piekelko v. Lake View Brg. Co. 65 Misc. 365, 119 N. Y. S. 847; Gaw v. Glassboro Novelty Glass Co., 20 Ohio Cir. Ct. 416; In re Estate of James, 99 Cal. 374, 33 P. 1122, 37 A. S. R. 60; Ransome-Crummey Co. v. Martenstein, 167 Cal. 406, 139 P. 1060; Young v. Young, 12 Lea (Tenn.) 335; Ridgely v. Bennett, 13 Lea (Tenn.) 210; Kindell v. Titus, 9 Heisk. (Tenn.) 727; Shankle v. Ingram, 133 N. C. 254, 45 S. E. 578; Young v. Hamilton, 135 Ga. 339, 69 S. E. 593, 31 L.R.A.(N.S.) 1057, Ann. Cas. 1912A, 144; Eagle Cliff Fishing Co. v. McGowan, 70 Or. 1, 137 P. 766; Dippold v. Cathlamet Timber Co. 98 Or. 183, 193 P. 909.

In Galpin v. Page, 18 Wall. (U. S.) 350, 366, 21 L. ed. 959, Mr. Justice Field said that jurisdiction of the cause or subject matter of the action "will generally appear from the character of the judgment, and will be determined by the law creating the court or prescribing its general powers." He stated that where jurisdiction affirmatively appears to be lacking, the judgment is void upon its face and collateral attack will lie, and "were not this so it would never be possible to attack collaterally the judgment of a superior court, although a want of jurisdiction might be apparent upon its face; the answer to the attack would always be that, notwithstanding the evidence or the averment, the necessary facts to support the judgment are presumed."

If the jurisdiction of the court below involved the ascertainment of a fact, its decision upon the question of fact would be conclusive on collateral attack. But in this case the facts are set forth in the complaint and are established conclusively as a matter of record.

The mere fact that affidavits and oral testimony were received does not warrant the court in disregarding the allegations of the complaint. In Missouri Pacific R. Co. v. Norwood, 283 U. S. 249, 253, 51 S. Ct. 458, 460, 75 L. ed. 1010, Mr. Justice Butler said: "But the affidavits filed in support of the application for a temporary injunction may not be considered in determining whether the complaint states facts sufficient to constitute ground for relief," citing numerous cases.

In the decisions of this court cited *supra,* this principle was applied as a matter of course. In every one of the cases cited, the court rendering the judgment collaterally attacked had first passed on the question of its own jurisdiction. Notwithstanding such decision that it had jurisdiction, this court did not hesitate to pronounce the judgment and the entire proceedings void, because such jurisdiction did not exist as a matter of law. This question has been before the courts of New York in many cases. In Matter of Doey v. Clarence P. Howland Co. 224 N. Y. 30, 38, 120 N. E. 53, 55, the court stated the rule as follows: "The general rule is that lack of jurisdiction to render a judgment or determination may be asserted at any time, and the only exception of which I am aware is where jurisdiction depends upon a question of fact. If that be litigated and determined, then the question is settled by the judgment, which becomes final and conclusive unless set aside by a direct attack or reversed on appeal therefrom. (O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537; Ferguson v. Crawford, 70 N. Y. 253, 26 Am. R. 589.) In all other cases where there is a lack of authority to hear and determine the subject matter of the controversy, an adjudication is a nullity and will be so declared at the instance of a party affected thereby. (Matter of Will of Walker, 136 N. Y. 20, 32 N. E. 633.)" The other New York cases are in accord. Nankivel v. Omsk All Russian Government, 237 N. Y. 150, 142 N. E. 569; Hanna v. Stedman, 230 N. Y. 326, 130 N. E. 566; Matter of Baltimore Mail S. S. Co. v. Fawcett, 269 N. Y. 379, 199 N. E. 628, 104 A. L. R. 1068; O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537; People ex rel. Lower v. Donovan, 135 N. Y. 76, 31 N. E. 1009; Sleicher v. Sleicher, 224 App. Div. 529, 231 N. Y. S. 538; Goldberg v.

Levine, 199 App. Div. 292, 192 N. Y. S. 124; Davidson v. Ream, 164 N. Y. S. 1037; Matter of McGarren, 112 App. Div. 503, 98 N. Y. S. 415. This question has been decided many times by the Supreme Court of the United States. In Vallely v. Northern F. & M. Ins. Co. 254 U. S. 348, 41 S. Ct. 116, 117, 65 L. ed. 297, this question is considered. In that case the court not only answered the arguments made in the majority opinion but also distinguished the United States cases cited therein. An insurance company had been adjudged bankrupt in involuntary proceedings, although the bankruptcy act provided that an insurance company should not be subject to involuntary bankruptcy. It appeared from the face of the petition in bankruptcy that the alleged bankrupt was an insurance company. It was contended that the question could only be raised by appeal, writ of error, or prompt motion to vacate and that the exemption of the company from bankruptcy did not go to the jurisdiction of the court over the subject matter. It was claimed there, as here, that the valid exercise of jurisdiction does not depend upon the correctness of the decision and that if the court reached a wrong conclusion, the judgment was not void, but merely erroneous, to be corrected on appeal or motion to vacate, and that as long as it stood it was binding on everyone. In answer to these contentions, the court said there is plausibility in the propositions, taken in their generality, but [254 U. S. 353] "Courts are constituted by authority and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal. Elliott v. Peirsol, 1 Pet. 328, 340 [344], 7 L. ed. 164; Old Wayne Mutual Life Association v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. ed. 345." Distinguishing Des Moines Navigation Co. v. Iowa Homestead Co. 123 U. S. 552, 8 S. Ct. 217, 31 L. ed. 202, the court said [254 U. S. 354]: "In Des Moines Navigation Co. v. Iowa Homestead Co. 123 U. S. 552, 8 S. Ct. 217, 31 L. ed. 202, there came up to be considered also the effect of a prior adjudication as dependent upon an allegation of diversity of citizenship, and the ruling in McCormick v. Sullivant [10 Wheat. 192, 6 L. ed. 300] was

affirmed. The immediate comment on these cases is that the courts had jurisdiction of their subject-matter and necessarily power to pass upon the fact (diversity of citizenship) upon which that jurisdiction depended in the given case. The subject-matter of the suit was not withheld from them by explicit provision of the law which was their sole warrant of power." This sufficiently distinguishes Foltz v. St. Louis & S. F. Ry. Co. (C. C. A.) 60 F. 316. In the instant case, jurisdiction to issue a temporary injunction is withheld from the courts except upon compliance with its provisions. Therein this case is distinguishable from those cited *contra* in the majority opinion.

This question has arisen in numerous cases in which *habeas corpus* has been issued out of the Supreme Court of the United States to review convictions for contempt. While *habeas corpus* is regarded by the Supreme Court of the United States as an exercise of its appellate jurisdiction, the review is regarded as involving collateral attack on the judgments and orders reviewed. Nielsen, Petitioner, 131 U. S. 176, 9 S. Ct. 672, 33 L. ed. 118; Craig v. Hecht, 263 U. S. 255, 44 S. Ct. 103, 68 L. ed. 293; Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. ed. 759; Knewel v. Egan, 268 U. S. 442, 45 S. Ct. 522, 69 L. ed. 1036; United States ex rel. Vajtauer v. Commr. of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. ed. 560; McNally v. Hill, Warden, 293 U. S. 131, 55 S. Ct. 24, 79 L. ed. 238. In these cases the rule has been asserted many times that erroneous decision of a court as to jurisdiction is itself void and the judgment rendered in the exercise of such assumed jurisdiction is void also. Ex parte Siebold, 100 U. S. 371, 25 L. ed. 717; In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. ed. 216; In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. ed. 402; In re Mills, 135 U. S. 263, 10 S. Ct. 762, 34 L. ed. 107; Ex parte Fisk, 113 U. S. 713, 5 S. Ct. 724, 28 L. ed. 1117; Morrisey v. Shenango Furnace Co. (C. C. A.) 280 F. 798; Ex parte Kozlowski (D. C.) 277 F. 83.

The supreme court of Illinois in People ex rel. Carlstrom v. Shurtleff, 355 Ill. 210, at page 220, 189 N. E. 291, 295, said: "A finding by a court that it has jurisdiction in a case is always overcome when the finding is irreconcilable with the facts disclosed

by the record. In such a case the record impeaches itself, as it did in the case of People v. Kelly, *supra* [352 Ill. 567, 186 N. E. 188]. It has never been held where the record itself shows that the evidence of jurisdiction upon which the court acted was insufficient, that its finding in favor of jurisdiction was conclusive. [Citation.] It would be absurd to say that such finding was conclusive when the very record shows that the finding itself was void for want of jurisdiction. [Citation.] The return in this case and the answer and traverse showed a lack of jurisdiction. According to an unbroken line of authorities the respondent was rendered powerless to proceed further except to dismiss the petition, and the order of discharge was null and void. Respondent was without jurisdiction to enter the order of discharge." Two of the leading cases holding injunctions void and subject to collateral attack because it appeared that the injunctions related to matters not of equitable cognizance are Dickey v. Reed, 78 Ill. 261, 273-274, and Walton v. Develing, 61 Ill. 201. To the same effect, Goudy v. Hall, 30 Ill. 109. In State ex rel. Macon Creamery Co. v. Mix, 222 Mo. App. 426, 438, 7 S. W. (2d) 290, 295, the court said: "It gives no sanction to the view that the court may determine erroneously matters of jurisdiction appearing on the face of the record, and by so doing confer upon itself jurisdiction. The court may not erroneously determine that the petition states a cause of action against a defendant residing in the county where the suit is brought in order to confer upon itself jurisdiction of the person of a codefendant residing and served with process in another county. Nor may the court confer upon itself jurisdiction of such codefendant by erroneously deciding that the cause of action stated in the petition against such codefendant accrued in the county where the suit is brought." And see, Mercantile Bank v. Becker (Mo. Sup.) 40 S. W. (2d) 626, 75 A. L. R. 1227; Jones v. Wright, 2 Ohio Cir. Ct. 649; Ray v. Ray, 330 Mo. 530, 50 S. W. (2d) 142. A court cannot confer jurisdiction on itself by erroneously deciding that it has jurisdiction. The decision itself is void.

The authorities cited in the majority opinion, in which the decision on the question of jurisdiction turns on a question of fact,

are not in point. The Supreme Court of the United States has distinguished the principal United States case cited in the majority opinion. In the other cases cited the decision of the question of fact was upon conflicting and disputed evidence, not appearing of record. The question here being one of law, it is to be decided upon the record, and an erroneous decision of a court in this respect is subject to collateral attack for the reasons mentioned.

Cases like State ex rel. Tuthill v. Giddings, 98 Minn. 102, 107 N. W. 1048, and Ordean v. Grannis, 118 Minn. 117, 136 N. W. 575, 578, 1026, L. R. A. 1915B, 1149, far from being in conflict with this dissent, actually support it. In State ex rel. Tuthill v. Giddings [98 Minn. 104], the court pointed out that the relief granted was "within the authority and jurisdiction of the court." That distinguishes it from this case. In Ordean v. Grannis the court pointed out that the order involved was within the jurisdiction of the court and therefore not void, but it further stated [118 Minn. 127]: "There is no doubt that, though a court have jurisdiction of the subject-matter and the parties, if it exceeds its jurisdiction, makes a judgment or order which in no case it had jurisdiction to make, such judgment or order is void." This court thereby recognized the rule which applies to this case and which was applied in the numerous Minnesota cases cited *supra.*

4. It is suggested that if it be conceded that Judge Peterson's decision was erroneous, it was not void and that defendant had a complete remedy by speedy review on appeal. This is entirely beside the question because a party is not bound to take an appeal from a void judgment or order and because an appeal from a judgment or order void for want of jurisdiction does not cure the jurisdictional defect. With respect to the first ground it is to be observed that such orders and judgments are void without an appeal. In Vallely v. Northern F. & M. Ins. Co. 254 U. S. 348, 354, 41 S. Ct. 116, 65 L. ed. 297, the court said they are void, and not voidable, "even prior to reversal." This was a case arising under the bankruptcy act under which there was a right of speedy appeal. If the argument advanced is valid, the right of speedy appeal in criminal cases in the federal courts has abolished the doctrine of collateral

attack on void judgments and orders. Answering a similar argument in the negative in Kamp v. Kamp, 14 Sickels (N. Y.) 212, 215, the court of appeals said: "One is not bound to appeal from a void order or judgment, but may resist it and assert its invalidity at all times." An appeal would not cure the defect or make the injunction valid. In 15 R. C. L. p. 846, § 320, the rule is aptly stated: "The affirmance of a void judgment is also void as are all proceedings to enforce the affirmed judgment by execution and sale, and where a judgment is void because the court had no jurisdiction, an affirmance of the judgment on appeal will not cure the defect or give life to the invalid judgment." See Ball v. Tolman, 135 Cal. 375, 87 A. S. R. 110. One of the reasons for requiring the findings under § 7 is to prevent the improvident issuance of injunctions. The history of the legislation, especially the testimony before the congressional committees, demonstrates that the right of speedy appeal is entirely unrelated to the jurisdictional provision of § 7. It is well recognized that an appeal from an order granting a temporary injunction is practically no remedy at all. To mitigate the results of improvidently granting temporary injunctions speedy appeal is provided. Commenting upon this subject, Frankfurter and Greene in *The Labor Injunction*, at pp. 224-225, state: "Another grave defect in the actual practice governing labor injunctions is dilatoriness in appeals. * * * Time is of the essence in a strike. If modification or reversal of an injunction is to have any value, it must come before the energies of a strike have been spent."

The jurisdictional requirements of the statute were intended to place it beyond the power of any court to nullify it by interpretation. If the court below can by its own decision hold that a labor dispute is not involved, by its own *ipse dixit*, it has invested itself with jurisdiction which the law withholds. If collateral attack of void orders is denied, the process of nullification has begun as far as this law is concerned. To hold that the present controversy is not a labor dispute, is work of nullification such as was inflicted on the Clayton act and similar state laws. See Frankfurter and

Greene, *The Labor Injunction,* p. 176; 50 Harv. L. Rev. 1295; 35 Mich. L. Rev. 1320; 84 Univ. of Pa. L. Rev. 771.

5. Contempt proceedings cannot be based on an injunctional order void for want of jurisdiction. It cannot be said as a matter of law that the purported order is an order. Hence no order of the court was violated. Doing what a void order prohibits is not a contempt. The rule has been thus stated: "It is a general rule that no court can punish as for a contempt the disobedience of an order made without jurisdiction." 6 R. C. L. p. 505, § 17. This rule has been applied by this court. In State ex rel. Holland v. Miesen, 98 Minn. 19, 106 N. W. 1134, 108 N. W. 513, it was held that a sentence for constructive contempt was void for exceeding punishment provided by statute; in State ex rel. Burnquist v. District Court, 141 Minn. 1, 168 N. W. 634, 3 A. L. R. 1476, it was held that contempt proceedings could not be based on a temporary injunction void for want of jurisdiction of the court to issue it, and in State ex rel. Evans v. District Court, 118 Minn. 170, 136 N. W. 746, it was held that contempt proceedings could not be based on a void injunctional order of the juvenile court prohibiting the marriage of a child. The authorities sustaining this rule are numerous and are cited in support of the text in 13 C. J. p. 13, § 14, note 17. An adjudication that defendant is guilty of contempt in disregarding an injunction which is void for jurisdiction is void. 14 R. C. L. p. 470, § 170, note 2. This question has been considered many times by the Supreme Court of the United States. In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. ed. 402; In re Mills, 135 U. S. 263, 10 S. Ct. 762, 34 L. ed. 107; Ex parte Fisk, 113 U. S. 713, 5 S. C. 724, 726, 28 L. ed. 1117; Ex parte Siebold, 100 U. S. 371, 25 L. ed. 717. In Ex parte Fisk [113 U. S. 718], Mr. Justice Miller said: "When, however, a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void." And at p. 725: "If the law governing the Circuit Court gave it no power to make or continue this examination, but in fact forbade it, then it could not enforce the order."

In Morrisey v. Shenango Furnace Co. (C. C. A.) 280 F. 798, an injunction enjoining the Village of Buhl, Minnesota, and its officers, from spending village funds over a four-year period was held not to be within the equity jurisdiction of the federal courts and hence the injunction was void upon its face. A violation of the injunction was held not punishable as a contempt because the injunction itself was void upon its face.

Our function is to pass on the validity of the injunction and the legality of relator's acts. The temporary injunction was void for want of jurisdiction of the court to issue it. Being void, it was not entitled to obedience and did not receive it. The relator acted at his peril. But he acted within his rights. The conviction for contempt should be set aside and relator discharged.